S04A1298. TARVER v. THE STATE.
(602 SE2d 627)

THOMPSON, Justice.

Brandon Dekil Tarver was found guilty by a jury of malice murder and armed robbery in connection with the shooting death of the proprietor of a convenience store.[1] The State sought the death

---

[1] The crimes took place on May 4, 2000. An indictment was returned on December 18, 2000, charging Tarver with malice murder, felony murder while in the commission of an armed robbery, and armed robbery. The State sought the death penalty. Trial commenced on August 4, 2003. On August 7, 2003, a jury found Tarver guilty of malice murder and armed robbery. On the same day, the jury found the existence of three statutory aggravating circumstances, and

penalty. The jury set the punishment at life without possibility of parole finding the following statutory aggravating circumstances: the murder was committed while the defendant was engaged in the commission of an armed robbery (OCGA § 17-10-30 (b) (2)); the murder was committed for the purpose of receiving money or any other thing of monetary value (OCGA § 17-10-30 (b) (4)); and the murder was outrageously or wantonly vile, horrible or inhuman in that it involved depravity of mind (OCGA § 17-10-30 (b) (7)). Tarver appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence to support the armed robbery conviction, as well as the jury's finding of the statutory aggravating circumstances. For the reasons which follow, we affirm the judgment of conviction and sentence, and the finding of the (b) (2) and (b) (4) statutory aggravating circumstances. However, we conclude that the evidence was insufficient to support the (b) (7) aggravating circumstance.

The victim William Westbrook owned and operated a convenience store in Riddleville, Georgia. Customers discovered Westbrook's body on the floor of the store. He had been shot four times in the head and chest; each gunshot wound would have been fatal within a relatively short period of time. Westbrook's wallet and pistol were found near the body. Although Westbrook normally kept several hundred dollars in cash in his wallet, the discarded wallet contained no money. The police also found a plastic bag containing a white powdery substance which appeared to be cocaine, but which later tested negative for narcotics. The investigation ensued.

Several months later, Tarver's friend Roger Poole described to the GBI case agent a plot that Tarver had concocted to place the blame for the shooting on a Derek Carlyle, in order to avert suspicion from himself. In furtherance of that plot, Tarver gave Poole a handwritten note describing the crime in great detail, including information that was not made public. Poole was to use that information and confess to the crime, claiming to be Carlyle. Ultimately, Poole gave the note to the GBI agent and implicated Tarver.

Tarver was arrested for the crime. He received *Miranda* warnings and agreed to give a statement to the investigating officers. Tarver admitted that he went to the store for the purpose of obtaining Westbrook's .38 pistol; in preparation for the robbery, Tarver brought with him a pair of gloves and counterfeit drugs to leave at the scene

set the sentence at life without possibility of parole. Tarver was sentenced accordingly for the murder and to a consecutive term of life for the armed robbery conviction. A motion for new trial was filed on August 21, 2003, and denied on February 20, 2004. A notice of appeal was filed on March 12, 2004. The case was docketed in this Court on April 8, 2004, and was submitted for a decision on the briefs on May 31, 2004.

to make it appear as a drug deal; he observed the pistol behind the counter and asked Westbrook for some items located on the back wall; as Westbrook turned around, Tarver grabbed the gun, a struggle ensued, and Tarver shot Westbrook in the chest; Tarver unsuccessfully attempted to open the cash registers; when he was unable to do so, he took Westbrook's wallet from him; Tarver heard Westbrook coughing, and then shot him again in the head; Tarver discarded the empty wallet and pistol at the scene and fled on a bicycle.

1. "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). In his statement to the police, Tarver admitted taking Westbrook's wallet at gunpoint, but claimed that it contained no money. However, Westbrook's widow testified that he normally kept several hundred dollars in cash in his wallet. Even assuming arguendo that the wallet was empty when Tarver removed it from the victim, "the offense of armed robbery is committed merely by the armed taking of the 'property of another,' regardless of whether its value is great or small." *Bell v. State*, 227 Ga. 800, 801 (1) (183 SE2d 357) (1971). The "taking" element of OCGA § 16-8-41 (a) is satisfied by "[e]ven ' "the slightest change of location whereby the complete dominion of the property is transferred from the true owner to the trespasser. . . ." ' OCGA § 16-8-41 (a). [Cit.] And it is not necessary that the property taken be permanently appropriated." *Bradley v. State*, 272 Ga. 740, 742 (2) (533 SE2d 727) (2000).

2. The evidence was sufficient for a rational trier of fact to find Tarver guilty beyond a reasonable doubt of the crimes of murder and armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Having determined that the armed robbery was proven beyond a reasonable doubt, there is no merit to Tarver's assertion that the OCGA § 17-10-30 (b) (2) (murder committed in commission of another capital felony) aggravating circumstance cannot stand. See *Spivey v. State*, 253 Ga. 187 (18) (319 SE2d 420) (1984) (armed robbery is a capital felony for purposes of supporting the finding of a (b) (2) statutory aggravating circumstance).

4. By Tarver's own admission, the murder was committed for the purpose of obtaining the gun and the proceeds of the cash registers, thus establishing beyond a reasonable doubt the existence of the OCGA § 17-10-30 (b) (4) aggravating circumstance (murder committed "for the purpose of receiving money or any other thing of monetary value").

5. The jury also found the existence of the OCGA § 17-10-30 (b) (7) aggravating circumstance as follows: "the murder of William Bobby

Westbrook was outrageously and wantonly vile, horrible, and inhuman in that it involved depravity of mind." On appeal, we are required to determine whether the evidence was sufficient to enable the jury to find the existence of the statutory aggravating circumstance beyond a reasonable doubt. See OCGA § 17-10-31.1 (a); *Philpot v. State*, 268 Ga. 168 (1) (486 SE2d 158) (1997).

The OCGA § 17-10-30 (b) (7) aggravating circumstance:

> consists of two major components, the second of which has three sub-parts, as follows: (I) The offense of murder was outrageously or wantonly vile, horrible or inhuman (II) in that it involved (A) aggravated battery to the victim, (B) torture to the victim, or (C) depravity of mind of the defendant. In determining "whether the evidence supports the jury's . . . finding of this statutory aggravating circumstance . . ." the evidence must be sufficient to satisfy the first major component of the statutory aggravating circumstance and at least one sub-part of the second component.

(Punctuation omitted.) *Hance v. State*, 245 Ga. 856, 860-861 (3) (268 SE2d 339) (1980).

"The phrases 'outrageously or wantonly vile, horrible or inhuman' are words of common understanding, have essentially the same meaning, and are included in the statute to distinguish ordinary murders for which the penalty of death is not appropriate, from those murders for which the death penalty [or life without parole] may be imposed." *Hance*, supra at 861 (3). This Court will restrict its approval "under this statutory aggravating circumstance to those cases that lie at the core." *Harris v. State*, 237 Ga. 718, 733 (230 SE2d 1) (1976).

As to the second component, the jury in this case was charged that they may find the existence of the (b) (7) aggravating circumstance only if they were to find that the murder was outrageously or wantonly vile, horrible or inhuman "in that it involved depravity of mind." And they determined beyond a reasonable doubt that the (b) (7) circumstance as charged was proven. In *West v. State*, 252 Ga. 156, 161 (appendix) (313 SE2d 67) (1984), this Court proposed a jury instruction defining "depravity of mind," as follows:

> depravity of mind is a reflection of an utterly corrupt, perverted or immoral state of mind. In determining whether or not the offense of murder in this case involved depravity of mind on the part of the defendant, you may consider the age and physical characteristics of the victim and you may consider the actions of the defendant prior to and after the

commission of the murder. In order to find that the offense of murder involved depravity of mind, you must find that the defendant, as the result of his utter corruption, perversion or immorality, committed aggravated battery or torture upon a living person, or subjected the body of a deceased victim to mutilation, or serious disfigurement or sexual abuse.[2]

In Tarver's case, the State relied solely upon depravity of mind as the basis for the (b) (7) aggravating circumstance; neither torture nor an aggravated battery to the victim was asserted. In fact, the only evidence before the Court shows that the initial gunshot, which would be fatal within minutes, was fired during a struggle. The remaining gunshots, while wantonly vile and inhuman, cannot be said to reflect "a consciousness materially more 'depraved' than that of any person guilty of murder." *Godfrey v. Georgia*, 446 U. S. 420, 432 (100 SC 1759, 64 LE2d 398) (1980). Accordingly, we hold that the depravity of mind (b) (7) aggravating circumstance was not supported by the evidence.

6. A sentence of life without parole may not be imposed "unless the jury verdict includes a finding of at least one statutory aggravating circumstance and a recommendation that such sentence be imposed." OCGA § 17-10-31.1 (a). See also *State v. Ingram*, 266 Ga. 324 (467 SE2d 523) (1996). "Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance . . . does not taint the proceedings so as to invalidate the other aggravating circumstance found and the sentence . . . based thereon." *Burger v. State*, 245 Ga. 458, 462 (4) (265 SE2d 796) (1980). It follows that Tarver was properly sentenced to life without parole.

*Judgment affirmed. All the Justices concur, except Hunstein and Carley, JJ., who concur in Divisions 1, 2, 3, 4, 6 and in the judgment.*

DECIDED SEPTEMBER 13, 2004.

*Garrett & Gilliard, Michael C. Garrett, Joe H. Thalgott*, for appellant.

*W. Steven Askew, District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.

---

[2] Tarver did not request a jury instruction defining depravity of mind, and none was given. "[I]nstructions clarifying the statutory language of the (b) (7) aggravating circumstance need not be given absent a request for such clarifying instructions (except for the phrase 'aggravated battery')." *West*, supra at 160. Under the circumstances, Tarver was not entitled to such an instruction.