S05A1863. DANIELS v. THE STATE.
(628 SE2d 110)

HINES, Justice.

William Henry Daniels appeals his conviction for the felony murder of Anthony Sharpe. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Daniels was married to Lois McBurroughs. She was seated in a

---

[1] Sharpe was killed on June 30, 2001. On September 18, 2001, a Colquitt County grand jury indicted Daniels for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. Daniels was tried before a jury December 3-6, 2001, and found guilty of felony murder and aggravated assault; he was also found guilty of involuntary manslaughter as a lesser included offense of malice murder. On December 13, 2001, Daniels was sentenced to life in prison for felony murder; involuntary manslaughter and aggravated assault merged with the felony murder conviction. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Daniels moved for a new trial on December 27, 2001, and amended the motion on May 4, 2005. The trial court denied the motion on June 13, 2005. Daniels filed his notice of appeal on June 22, 2005. The appeal was docketed in the Court of Appeals of Georgia on July 19, 2005. The Court of Appeals transferred the case to this Court on July 22, 2005; it was docketed in this Court on July 25, 2005, and submitted for decision on September 19, 2005.

tavern with Sharpe, near the door to the outside. Daniels entered, spoke to McBurroughs about leaving, exchanged some heated words with Sharpe, and produced a knife from his pocket. He and Sharpe grappled with one another and quickly went outside. Daniels made several swiping or swinging motions with his hand and the men fell to the ground. Sharpe arose, saying he did not want to fight Daniels. Sharpe then said that Daniels had "cut" him. Other persons placed Sharpe in an automobile to be taken to a hospital. While en route, Sharpe said that he did not want to die, asked why this had happened to him, and stated he had done nothing wrong. He died from a stab wound to the heart.

After the stabbing, Daniels gave the knife to a relative, who told him to run, which Daniels did, leaving the scene. He passed another relative and told her that he thought he had "cut" someone. He went to the home of yet another relative and told her that he had argued with McBurroughs about leaving the tavern, had gotten into a fight with someone there, and stabbed him.

Daniels testified at trial. Although some of his testimony was inconsistent, he said that: he entered the tavern and requested McBurroughs leave with him; he became angry with Sharpe when Sharpe said McBurroughs did not want "to be bothered" by Daniels; Sharpe jumped up, scaring and panicking Daniels; he did not see Sharpe with any weapon and did not know if Sharpe had anything in his hands or pockets; Sharpe jumped on Daniels and the men grappled and went out the door; he did not know how Sharpe got stabbed; he did not "wave" the knife; a relative had to pry the knife from his hand; and he walked away. Daniels also denied telling his relatives that he had stabbed a man, and contended that he did not know that Sharpe had been stabbed until he was arrested. However, he also testified that he saw blood at the scene of the stabbing, and afterward on his clothes.

1. The jury was instructed on the law of malice murder, voluntary manslaughter, involuntary manslaughter, mutual combat, self-defense justification, aggravated assault, and felony murder. The jury was not required to accept Daniels's trial testimony as true, but could judge his credibility and weigh his testimony against other evidence. *Miller v. State*, 277 Ga. 707, 709 (1) (593 SE2d 659) (2004). The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Daniels committed each of the crimes of which he was found guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Daniels asserts that the trial court erred in allowing the State to play for the jury an audiotape of an interview investigating police officers conducted with McBurroughs five days after the stabbing. The State called McBurroughs to testify. During questioning, she

stated that she considered herself to be Daniels's common law wife.[2] After further questioning outside the presence of the jury, the trial court ruled that McBurroughs had been the common law wife of Daniels since 1996. See OCGA § 19-3-1.1. McBurroughs asserted her marital privilege against testifying. See OCGA § 24-9-23. The State moved to play the tape of the recorded interview under the necessity exception to the bar against hearsay testimony. See OCGA § 24-3-1 (b); *Parks v. State*, 275 Ga. 320, 322 (2) (565 SE2d 477) (2002). Over Daniels's objection that he was deprived of any opportunity to cross-examine McBurroughs on the content of her statements in the interview, the court permitted the State to play the tape.

The opinion of the United States Supreme Court in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), declares that a testimonial out-of-court interview such as the one at issue is inadmissible as a violation of the Confrontation Clause of the United States Constitution. *Crawford* applies to cases pending on direct review at the time that opinion issued. See *Gay v. State*, 279 Ga. 180, 182, n. 2 (611 SE2d 31) (2005). As Daniels's case was awaiting a hearing on his motion for new trial at the time of the *Crawford* decision, that opinion controls, and the tape of the interview should not have been played for the jury.

Nonetheless, admission of this type of evidence will be deemed harmless if there is no reasonable possibility that it contributed to a guilty verdict. *Yancey v. State*, 275 Ga. 550, 557-558 (3) (570 SE2d 269) (2002). This rule applies when the erroneously admitted evidence is simply cumulative of admissible and admitted evidence. See *Moody v. State*, 277 Ga. 676, 680 (4) (594 SE2d 350) (2004). The quality of the tape recording is such that the content of McBurroughs's speech is barely discernible.[3] To the extent that the tape is audible, McBurroughs's statements are cumulative of other testimony: Daniels came in and spoke to her about leaving; he and Sharpe had a verbal exchange; Daniels produced a knife; Sharpe made some movement toward Daniels; the men grappled and quickly went through the nearby door; and she did not see the stabbing.

There is no reasonable possibility that playing the audiotape of McBurroughs's interview contributed to the jury's verdicts. *Yancey,* supra.

*Judgment affirmed. All the Justices concur.*

---

[2] She had not yet testified about the stabbing or events leading to it.

[3] No transcript of the interview was provided to the jury. During deliberation, the jury twice requested that the tape be played again.

DECIDED MARCH 27, 2006.

*Ronald L. Beckstrom*, for appellant.

*Brian A. McDaniel, District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.