S06A0030. BUTTRAM v. THE STATE.

(631 SE2d 642)

MELTON, Justice.

Michael Willard Buttram was convicted of two counts of malice murder, burglary, and theft by taking (an automobile) in connection with the fatal shootings of Tara Cantrell and her mother, Millie Cantrell. The State sought the death penalty, but in the bifurcated trial the jury, after finding the presence of two statutory aggravating circumstances, recommended a sentence of life without parole.[1] Buttram appeals from denial of his amended motion for new trial. Finding no error, we affirm.

1. Buttram and Tara had a tumultuous relationship that Tara ended one month before the murders. On January 19, 1999, the police arrested Buttram for stalking and harassing Tara and her then boyfriend, Jason Tally, after the break-up. Following Buttram's arrest, Tara informed Buttram that she was pregnant, and the couple briefly reunited until the relationship finally ended when Buttram questioned the child's paternity. On March 8, 1999, Buttram used an unauthorized copy of Millie's house key to gain entry into the Cantrell home while Tara was alone in the residence. Buttram threatened Tara, and Tara managed to call her mother for assistance. By the time Millie arrived, Buttram had departed from the home, and Millie contacted the police. After the police arrived to investigate, they overheard Buttram leave numerous phone messages begging Tara to speak with him. Shortly after the police left the residence to look for Buttram, a neighbor observed Buttram enter the house through the back door. The neighbor heard several gunshots and then saw Buttram "come flying out the door" and drive away in Tara's car. The

---

[1] Buttram was indicted on October 22, 1999 in Cobb County and charged with two counts of malice murder, burglary and theft by taking. The State sought the death penalty. The jury found Buttram guilty on all counts and finding aggravating circumstances existed for each murder, OCGA § 17-10-30 (b) (2), fixed his sentence at life without parole. On November 22, 2003, the trial court sentenced Buttram to life imprisonment without parole for the murders, a concurrent twenty year sentence for the burglary conviction, and a ten year consecutive sentence for the theft by taking conviction. Buttram's motion for new trial filed on December 11, 2003, and amended on June 23, 2004, November 19 and 22, 2004, was denied March 3, 2005. His notice of appeal was filed April 1, 2005, docketed in this Court on September 2, 2005, and submitted for decision on the briefs.

medical examiner testified that Tara was shot twice in her abdomen and once in the head. Millie sustained five gunshot wounds to the hand, neck, back and head, all while she was on the phone with 911. Buttram fled to Texas where he ultimately surrendered to the Texas authorities.

We find that the evidence presented was sufficient to enable a rational trier of fact to find Buttram guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Tarver v. State*, 278 Ga. 358, 361 (5) (602 SE2d 627) (2004) (evidence sufficient to find existence of aggravating circumstances under OCGA § 17-10-30 (b)).

2. Buttram contends the trial court impermissibly restricted voir dire examination of prospective jurors by limiting questions on whether a prospective juror believed that life without parole was an "adequate" punishment for murder, and that, the result of the inadequate voir dire circumscribed his ability to identify unqualified jurors. As a general rule, a criminal defendant and the State are entitled to examine potential jurors on their inclinations and biases regarding parole, but the examination should be limited to the potential juror's willingness to consider a life sentence with, or a life sentence without, the possibility of parole. *Zellmer v. State*, 272 Ga. 735 (1) (534 SE2d 802) (2000). Where the trial court allowed Buttram to inquire if the prospective jurors would consider all aspects of punishment, it was not error for the court to limit further inquiry that exceeded the scope of permitted voir dire. *Spickler v. State*, 276 Ga. 164 (2) (575 SE2d 482) (2003).

3. Buttram asserts that the trial court erroneously refused to excuse one prospective juror for cause. The juror gave conflicting responses to the voir dire questions posed by counsel, but upon further questioning by the court to resolve the contradictory answers, the trial court found that the juror held no view that would substantially impair her ability to consider all possible sentences. See *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997). Because there is no evidence that this juror held a fixed opinion on Buttram's guilt or innocence such that she could not decide the case based on the evidence and the court's charge, and, there is no indication that she would not give full consideration to the three sentencing options, we find that the trial court properly exercised its discretion when it declined to strike the juror for cause. *Somchith v. State*, 272 Ga. 261 (2) (527 SE2d 546) (2000); *Brown v. State*, 268 Ga. 354 (3) (490 SE2d 75) (1997).

4. Buttram contends that the court erred in admitting hearsay statements made by Tara before her death to her father, Paul Cantrell. The trial court admitted the testimony under the necessity exception to the hearsay rule. Hearsay may be admitted under the

necessity exception if it meets the two prerequisites of necessity and trustworthiness. See OCGA § 24-3-1 (b); *McCoy v. State*, 273 Ga. 568 (4) (544 SE2d 709) (2001) (uncontradicted statements made to one in whom the deceased declarant placed great confidence are admissible). In this case Tara was unavailable, and the statements were trustworthy because Tara was in the act of confiding to her father. See *Ward v. State*, 271 Ga. 648 (2) (520 SE2d 205) (1999). Accordingly, the testimony was properly admitted under the necessity exception.

Buttram also contends that under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004),[2] wherein the United States Supreme Court clarified the Sixth Amendment Confrontation Clause requirements with respect to testimonial hearsay, the trial court erred in admitting the out-of-court testimonial statements made by Tara and her mother to the police before the shootings. See *Brown v. State*, 278 Ga. 810 (3) (607 SE2d 579) (2005).

> To the extent that the contested evidence consists of "out-of-court statements that the victim had made to police officers during the course of the officers' investigations of complaints made by the victim against [Buttram,]" it was inadmissible hearsay. [Cit.] However, a *Crawford* violation is harmless where "the hearsay . . . was cumulative of other admissible evidence. [Cit.]"

*Chapman v. State*, 280 Ga. 560 (2) (629 SE2d 220) (2006). Here, where the hearsay testimony was cumulative of other properly admitted evidence, its admission, even if erroneous, was harmless. Id. See also *Williams v. State*, 279 Ga. 731 (5) (b) (620 SE2d 816) (2005).

Citing *Baugh v. State*, 276 Ga. 736 (2) (585 SE2d 616) (2003), Buttram finally asserts that the trial court improperly allowed the State to bolster the testimony of Jason Tally, by presenting inadmissible hearsay statements he made to a police officer. However, the issue is not preserved for review where Buttram never raised a specific and timely objection to the testimony nor objected to alleged impropriety when it occurred to allow the trial court the opportunity to take remedial action. See *Pendergrass v. State*, 275 Ga. 264 (3) (564 SE2d 443) (2002). Furthermore, the officer's testimony about what he observed when he arrived at Tally's apartment complex did not constitute an impermissible statement of opinion regarding Tally's truthfulness in his earlier testimony.

---

[2] Although Buttram's trial predates this decision, it nevertheless controls in this appeal. See *Daniels v. State*, 280 Ga. 349, 350 (2) (628 SE2d 110) (2006).

5. There is no merit to Buttram's assertion that he was entitled to a mistrial for the State's violation of OCGA § 17-16-7 for withholding an oral statement by Tara, where the statement was not recorded or otherwise committed to writing. See *Burgess v. State*, 276 Ga. 185 (2) (576 SE2d 863) (2003); *Phagan v. State*, 268 Ga. 272 (11) (486 SE2d 876) (1997).

6. It was not error for the trial court to refuse to admit the unredacted adult magazine depicting situations immaterial to Tara and irrelevant to the issues at trial, where it allowed into evidence the cover page and the two pertinent pages showing photographs of the victim. *Smart v. State*, 277 Ga. 111 (2) (587 SE2d 6) (2003).

7. We find meritless Buttram's argument that the trial court erred by permitting Detective Herman to testify as to the sequence of gunshots based upon his observation of the crime scene, because it allowed the witness to improperly express an expert opinion without being qualified as an expert. Detective Herman had been in law enforcement for over 23 years and received specialized training in crime scene analysis, blood spatter interpretation, and wound analysis. His testimony concerning the sequence of the shooting, based upon his training and what he observed at the crime scene, was permissible and a matter for the jury to weigh. See *Rowe v. State*, 276 Ga. 800 (6) (582 SE2d 119) (2003).

8. There was no abuse of discretion in the trial court's refusal to declare a mistrial after the court advised Buttram's lawyer to refrain from inappropriately interrupting the testimony of the medical examiner. See *Lassic v. State*, 278 Ga. 701 (2) (606 SE2d 266) (2004). Moreover, Buttram has not shown by the record that the court's purportedly damaging rebuke constituted an expression of opinion on the case, see *Milhouse v. State*, 254 Ga. 357 (2) (329 SE2d 490) (1985); OCGA § 17-8-57, especially where the court reminded the jury of its previous instruction not to consider any actions, comments or opinions of the court in reaching its verdict.

9. The crime scene and pre-autopsy photographs of the murder victims were properly admitted, as none of the photographs depicted alterations to the victims' bodies. See *Cook v. State*, 270 Ga. 820 (11) (514 SE2d 657) (1999); *Bright v. State*, 265 Ga. 265 (16) (455 SE2d 37) (1995).

10. Buttram contends that during the State's cross-examination of his "relationship" counselor, the prosecutor improperly sought to elicit information from the witness about the contents of a conversation she had with Buttram's psychologist. Buttram thus avers that the trial court erred in refusing his request to limit the cross-examination. The record shows that on direct examination the witness testified about the counseling she provided to Buttram after his relationship with Tara ended. The record also reflects that during

cross-examination, the court sustained Buttram's motion to limit the State's inquiry to only those matters presented on direct examination of this same witness. Specifically, the trial court did not permit the prosecutor to elicit testimony from the witness about the contents of conversations with the psychologist or allow any inquiry into Buttram's psychological state. As a general rule, a trial court is vested with broad discretion to determine the scope of relevant cross-examination. *Kolokouris v. State*, 271 Ga. 597 (4) (523 SE2d 311) (1999). In the absence of a showing that the trial court abused its discretion, we find this enumeration without merit.

11. Because we disapproved the reasonable and moral certainty charge in *Wayne v. State*, 269 Ga. 36 (7) (495 SE2d 34) (1998), it was not error for the court to refuse to give it.

12. Buttram contends that the trial court erred by charging the jury on "grave suspicion," arguing that the charge weakens the reasonable doubt standard. This argument, however, has previously been rejected by this Court. See *Quintana v. State*, 276 Ga. 731 (6) (583 SE2d 869) (2003).

13. It is not error to refuse to include voluntary manslaughter on the verdict form where the court instructs the jury on voluntary manslaughter. *Brinson v. State*, 276 Ga. 671 (4) (581 SE2d 548) (2003).

14. Although Buttram asserts that he requested to represent himself during the penalty phase of the trial, the transcript reflects that he requested only to make closing argument and that he made the request post-verdict for the sole purpose of remedying his earlier decision not to testify. Even assuming Buttram's request could be construed as the exercise of the right to self-representation, the untimely request was properly denied. *Thaxton v. State*, 260 Ga. 141 (2) (390 SE2d 841) (1990) (defendant cannot frivolously change his mind in midstream by asserting right to self-representation once trial has commenced). See also *Preston v. State*, 257 Ga. 42 (3) (354 SE2d 135) (1987).

15. In the motion for new trial, Buttram raised the issue of the effectiveness of his trial counsel. He contends his attorney was ineffective in failing to object to various instances of hearsay testimony. In order to succeed on a claim that counsel was ineffective, Buttram must satisfy both prongs of the *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) test, i.e., that his counsel's performance was deficient and that, but for the deficient performance, there is a reasonable likelihood that the result of the proceeding would have been different. See *Lajara v. State*, 263 Ga. 438 (3) (435 SE2d 600) (1993). To satisfy the first prong of this test, Buttram must overcome the strong presumption that he received effective legal representation, see *Cammon v. State*, 269 Ga. 470 (4)

(500 SE2d 329) (1998), and to meet the second prong, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of representation and under the particular circumstances of the case. *Crouch v. State*, 279 Ga. 879 (4) (622 SE2d 818) (2005). In its written order on the motion for new trial issued after it had both tried the case and heard from Buttram's counsel at the hearing on the motion for new trial, the trial court determined that trial counsel was not ineffective in failing to object to every instance of hearsay where counsel testified that he made a strategic decision not to object in order to avoid alienating a jury that would ultimately determine whether to impose a sentence of death on his client. Because his actions fell within sound trial strategy and because Buttram fails to show how the lack of hearsay objections prejudiced his case, we affirm the findings of the trial court. *Kelly v. State*, 267 Ga. 252 (2) (477 SE2d 110) (1996).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 12, 2006.

*Derek H. Jones*, for appellant.

*Patrick H. Head, District Attorney, Amy H. McChesney, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.