296 Ga. 515
FINAL COPY

S14A1370.  LEEKS v. THE STATE.

HUNSTEIN, Justice.

Appellant Carrie Leeks was convicted by a jury of murder and related offenses for the July 4, 2006 stabbing death of her husband, Louis Woodall. Appellant appeals the denial of her amended motion for new trial and the grant of the State's motion to supplement the record.  For the reasons set forth below, we affirm in part and vacate in part.[1]

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows.  On July 4, 2006, Appellant and her husband were

---

[1] On October 3, 2006, a Fulton County grand jury indicted Appellant for malice murder, two counts of felony murder, aggravated assault with a deadly weapon, and possession of a knife during the commission of a felony.  Thereafter, during December 3-5, 2008, Appellant was tried before a jury.  On December 5, 2008, the jury returned a verdict of guilty on two counts of felony murder, aggravated assault with a deadly weapon, and possession of a knife during the commission of a felony. On the same day, the court sentenced Appellant to life imprisonment on one count of felony murder and merged the remaining counts.  See discussion about merger of counts, infra at Division 7.  Appellant filed a motion for new trial on January 5, 2009, which was amended on October 31, 2012.  The State filed a motion to supplement the trial transcript on January 8, 2013.  The court held a hearing on Appellant's motion and the State's motion on January 9, 2013.  On March 26, 2013, the court granted the State's motion and denied Appellant's motion in two separate orders.  Appellant filed a notice of appeal on April 18, 2013.  The appeal was docketed to the September 2014 term of this Court and submitted for a decision on the briefs.

hosting a party at their apartment when they began arguing. The victim shoved Appellant but not very hard. Appellant picked up a knife from a nearby table and stabbed the victim in the chest. The victim fell to the ground, then stood up, stumbled out of the apartment, and collapsed on the apartment's patio. Appellant washed the knife in the sink. One of Appellant's sisters called 911, and the dispatcher instructed her to apply pressure to the victim's wound. She handed the phone to Appellant so that she could treat the victim, and Appellant told the dispatcher that an unknown male stabbed the victim. When the ambulance arrived, Appellant rode with the victim in the ambulance to Grady Memorial Hospital. After the ambulance departed, one of Appellant's sisters told police officers that Appellant had stabbed the victim. Police officers apprehended Appellant at the hospital. The victim died at the hospital. According to the medical examiner, the victim died from a stab wound in his left chest, which entered his heart. Appellant was interviewed by a detective later that same day, and her videotaped statement from this interview was played for the jury. In her statement, Appellant admitted repeatedly that she stabbed the victim.

1. Though Appellant has not enumerated the general grounds, we find that the evidence as summarized above was sufficient to enable a rational trier of fact

to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which she was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'") (citation omitted).

2. Appellant argues that Judge Manis erred in granting the State's motion to supplement the record.[2] The jury submitted five notes to Judge Glanville. The first three notes are discussed in the trial transcript: Judge Glanville discussed the questions with counsel, called the jury to open court, and responded to the questions in the presence of Appellant and all counsel.

There is no discussion in the transcript of the last two jury notes. However, both of these notes are included as exhibits in the record, showing the time and date received by the court as well as a handwritten response by Judge Glanville. The question and response on Jury Note 4 are as follows: "On charges 2+3 (Felony Murder) are there lesser charges, such as manslaughter. . . . Answer: You will have

---

[2] Judge Ural Glanville presided over Appellant's trial and sentenced her. Because Judge Glanville was on active military duty at the time, Senior Judge Stephanie B. Manis held a hearing and issued rulings on Appellant's motion for a new trial and the State's motion to supplement.

to rely upon the . . . charge of the court." The question and response on Jury Note 5 are as follows: "We would like to see the letter Ms. Leeks wrote to Mrs. Woodall. . . . Answer: You will have to rely upon the evidence that was presented."

Because the transcript was incomplete, the State moved to supplement the trial transcript, pursuant to OCGA § 5-6-41 (f), with the affidavit of Judge Glanville and the testimony of the two prosecutors who tried the case, in order to show Judge Glanville's customary practice for responding to jury questions and notes. Judge Manis held a hearing, at which the two prosecutors and Appellant's trial counsel testified about what had occurred during trial and about Judge Glanville's customary practice for responding to jury questions and notes. In her order granting the State's motion to supplement, Judge Manis found that none of the attorneys could swear positively that Judge Glanville called them back to court to discuss the two jury questions. She further concluded that all of the attorneys agreed that it was Judge Glanville's customary practice to inform the attorneys of a jury question, summon the parties, and solicit input as to an appropriate response, either at a bench conference or in open court outside the presence of the jury.

With regard to Jury Note 4, Judge Manis found that Judge Glanville called the attorneys back to court to discuss the note, consulted the attorneys, and

submitted a response to the jury with the concurrence of the attorneys. Judge Manis determined that this was done at a bench conference. Judge Manis concluded that Appellant was present in court but not at the bench for the discussion of this jury note. She further found that Judge Glanville did not address Jury Note 4 in open court because neither party voiced any objection to the court's proposed response.

With regard to Jury Note 5, Judge Manis found that Judge Glanville called the attorneys back to court to discuss the note, consulted the attorneys, and submitted a response to the jury with the concurrence of the attorneys. Judge Manis determined that this was done in open court with Appellant present. Finally, with regard to both jury notes, Judge Manis concluded that if the attorneys had not agreed on a response, Judge Glanville would have immediately gone back on the record to permit the parties to state their respective positions and make a ruling. Judge Manis ordered that the transcript be amended to reflect all of these findings.

Appellant first argues that the lack of a complete transcript hampers her right to an appeal.

Because it is critical that the certified trial transcript reviewed by an

5

appellate court speak the truth so that the appellate court can conduct its review with the knowledge that the transcript accurately reflects what took place in the trial court, Georgia law authorizes a trial court to conduct a hearing when a party contends the transcript does not fully disclose what took place and to "resolve the difference so as to make the record conform to the truth." OCGA § 5-6-41(f).[3]

State v. Nejad, 286 Ga. 695, 697 (1) (690 SE2d 846) (2010). In accordance with OCGA § 5-6-41 (f), Judge Manis held a hearing and supplemented the record. Therefore, Appellant's argument lacks merit.

Next, Appellant argues that Judge Manis' findings of fact with regard to these two jury notes are clearly erroneous because neither Judge Glanville nor the prosecutors could absolutely recall what each jury note said or what discussions

---

[3] OCGA § 5-6-41 (f) provides as follows:

Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final disposition of the appeal.

occurred. She asserts that the testimony of the prosecutors and defense counsel conflicted. Because there is no transcript, Appellant contends that the presumption is Judge Glanville did not discuss the two jury questions with counsel.

"Where the correctness of the record is called into question the matter is to be resolved by the trial court." Patterson v. State, 233 Ga. 724, 731 (7) (213 SE2d 612) (1975). Judge Manis' findings as to what transpired with regard to the two jury notes are dispositive and not subject to our review. See Nejad, 286 Ga. at 698 (trial court's adoption of the prosecutor's testimony regarding the trial proceedings, in the absence of a record, was dispositive); Smith v. State, 260 Ga. 274 (3) (393 SE2d 229) (1990) (trial court's adoption of prosecutor's affidavit was dispositive, where the appellant argued that the record was unclear as to the charge conference and the prosecutor's affidavit conflicted with the affidavits of appellant's trial counsel); see also OCGA § 5-6-41 (g) ("where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection," and the parties are unable to agree on the correctness of such a transcript, "the decision of the trial judge thereon shall be

final and not subject to review").[4]

3. Appellant makes several arguments in support of her contention that Judge Manis erred in denying her motion for new trial. Appellant argues that Judge Glanville's discussion of Jury Note 4 with counsel violated her right to be present at a critical part of the proceeding because, although she was in the courtroom, she was not present at the bench. Appellant contends that she was entitled to have the jury note and the court's response handled in open court in her presence and for the court to obtain an affirmative waiver of her right to be present.

"A defendant has the constitutional right to be present at any stage of a criminal proceeding that is critical to its outcome if (his or her) presence would contribute to the fairness of the procedure." Barrett v. State, 275 Ga. 669, 671, (4) (571 SE2d 803) (2002) (citation and punctuation omitted). "Under this standard, a defendant's right to be present is not violated . . . by his involuntary absence from the conference held by a trial court with defense and prosecuting counsel to discuss a response to a deliberating jury's substantive inquiry." Lowery v. State, 282 Ga.

---

[4] We note that it makes no difference that Judge Manis held the hearing on the State's motion to supplement the record and granted the motion, rather than Judge Glanville who presided over Appellant's trial. See Nejad, 286 Ga. at 700 (presiding judge at trial recused from the case and a different judge heard the motion to supplement and issued a ruling thereon).

68, 74 (4) (b) (i) (646 SE2d 67) (2007). Judge Glanville answered the jury's question in the presence of, and with the acquiesce of, all counsel, and he merely referred the jury to the charges already provided. We do not find that Appellant could have made a meaningful contribution to the manner in which Judge Glanville formulated his response or that Appellant's presence could have contributed to the fairness of the procedure. See Campbell v. State, 292 Ga. 766 (4) (740 SE2d 115) (2013) (the right to be present is not violated when the defendant is absent during conferences addressing legal matters to which the defendant cannot make a meaningful contribution). Thus, Appellant's right to be present was not violated.

4. Appellant argues first that Judge Glanville failed to properly charge the jury on manslaughter because he did not inform the jury that manslaughter was a lesser included offense of murder and gave jury instructions that were weighted heavily toward murder. Second, she contends that as a result, Judge Glanville erred in responding to the jury's question about lesser included offenses in Jury Note 4 by telling the jury to rely on the charges previously given because these charges were inadequate. She asserts that Judge Glanville should have responded by recharging the jury and specifically instructing them that manslaughter is a lesser

9

included offense of murder.

Judge Glanville charged the jury on manslaughter as follows:

> After consideration of all of the evidence, before you would be authorized to return a verdict of guilty of malice/felony murder, you must first determine whether mitigating evidence, if any, would cause the offense to be reduced to voluntary manslaughter.

The court then instructed the jury on what constituted voluntary and involuntary manslaughter.

Defense counsel did not object to the manslaughter charges. This failure to object precludes appellate review "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b). Even though no objection was raised at the trial in this case, we are required to review the instruction for plain error because the "enumeration of error [has been] properly enumerated and argued on appeal." White v. State, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). Reversal for plain error is authorized if the following factors are met: "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id.

This Court does not require the trial courts to follow an exact

10

formula in instructing juries so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter. As a whole, the instruction in this case did not prevent the jury from fully considering voluntary manslaughter, and was adequate to inform the jury that before they could convict of malice or felony murder, they must first consider whether there was sufficient evidence of passion or provocation to support a conviction for voluntary manslaughter.

Kendrick v. State, 290 Ga. 873, 876 (3) (725 SE2d 296) (2012) (citation and punctuation omitted). In addition, the court gave the jury the correct statutory definitions for voluntary and involuntary manslaughter (based on the misdemeanor offense of reckless conduct). "A trial court does not abuse its discretion in refusing to give a jury charge in the exact language requested when the charge given substantially covers the correct principles of law." Gamble v. State, 291 Ga. 581, 582 (2) (731 SE2d 758) (2012). Accordingly, Appellant has not shown plain error because the instructions were not erroneous.

We now turn to Appellant's second argument, that Judge Glanville erred in his response to Jury Note 4 and he should have responded by recharging the jury and specifically instructing them that manslaughter is a lesser included offense of murder. "A trial court has a duty to recharge the jury on issues for which the jury requests a recharge. As a general matter, however, where no such request has been

11

made, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." Sharpe v. State, 288 Ga. 565, 569 (6) (707 SE2d 338) (2011) (citation and punctuation omitted). In Jury Note 4, the jury did not ask for a recharge on manslaughter. Therefore, given that the initial charges on manslaughter were correct, Judge Glanville's response to Jury Note 4 by referring the jury to the initial charges was not an abuse of discretion. See Kimmel v. State, 261 Ga. 332 (3) (404 SE2d 436) (1991) (court is not required to engage in a question and answer session with the jury, and instead, repeating the charges was legally sufficient).

5. Appellant argues that trial counsel was ineffective for failing to object to Judge Glanville's response to Jury Note 4. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). Because we have found that Judge Glanville's response to Jury Note 4 was proper and within his discretion, Appellant has not shown that counsel's failure to object to the response

12

constitutes ineffective assistance of counsel. See Suah v. State, 271 Ga. 89 (2) (515 SE2d 614) (1999) (where the jury charge on voluntary manslaughter was sufficient, the failure of trial counsel to object did not amount to ineffective assistance of counsel).

6. Appellant argues that the trial court erred by (1) using a verdict form that did not allow enough space for the jury to enter a manslaughter verdict; and (2) failing to instruct the jury on how it could return a verdict for manslaughter on the verdict form and specify where the jury could write in verdicts for these lesser included offenses. Appellant asserts that the trial court's errors harmed her by confusing the jury as to the possible verdicts and prevented the jury from fully deliberating and considering the lesser included offense of manslaughter.

The trial court overruled Appellant's objection, requesting to use a special, rather than general, verdict form. In overruling Appellant's objection and outside the presence of the jury, the trial court explained that for each count of the indictment, there were blanks for the jury to mark "Not Guilty" or "Guilty," and that there was sufficient space underneath each count for the jury to write in a lesser included offense or another offense. Based on our review of the verdict form, we reject Appellant's contention that there was inadequate space for the jury to find

13

her guilty of lesser included offenses.  In addition, Judge Glanville instructed the jury on voluntary and involuntary manslaughter, and therefore, it was not error to refuse to include voluntary or involuntary manslaughter on the verdict form.  See Buttram v. State, 280 Ga. 595, 599 (13) (631 SE2d 642) (2006) ("It is not error to refuse to include voluntary manslaughter on the verdict form where the court instructs the jury on voluntary manslaughter.").

As for how the jury should enter the verdict on the printed form, Judge Glanville instructed the jury as follows:

> If after considering the testimony and evidence presented to you, together with the charge of the court, you should find and believe beyond a reasonable doubt that the defendant, in Fulton County, Georgia, did on or about — pardon me, ladies and gentlemen[ ] — the 4th day of July, 2006, commit the offenses as alleged in the indictment, then you will be authorized to find the defendant guilty.  In that event, the form of your verdict would be: "We, the jury, find the defendant guilty."
> If you do not believe that the defendant is guilty of either of these offenses, or if you have any reasonable doubt as to the defendant's guilt, then it will be your duty to acquit the defendant; in which event, the form of your verdict would be: "We, the jury, find the defendant not guilty."

The jurors were also instructed on how to write in a guilty verdict for a lesser included offense on the verdict form:

> If you believe — if you do not believe beyond a reasonable

14

doubt that the defendant is guilty of aggravated assault with a deadly weapon, but do believe beyond a reasonable doubt that the defendant is guilty of reckless conduct, causing harm to or endangering the bodily safety of another, then you will be authorized to find the defendant guilty of reckless conduct, and the form of your verdict would be — the form of your verdict in that event would be: "We, the jury, find the defendant guilty of reckless conduct, causing harm to or endangering the bodily safety of another."

Judge Glanville also properly instructed the jury on the charged offenses, the State's burden of proof, and the presumption of innocence.

"Where, as here, the jury was instructed properly, we presume, in the absence of clear evidence to the contrary, that qualified jurors followed the trial court's instructions to consider voluntary [and involuntary] manslaughter before finding a defendant guilty of felony murder." White, 291 Ga. at 9. We do not find that the preprinted verdict form along with the jury instructions would have misled jurors of reasonable understanding. See Rucker v. State, 270 Ga. 431, 435 (5) (510 SE2d 816) (1999) (use of a jury verdict form with the words "guilty" and "not guilty" preprinted does not amount to error "unless the form would mislead jurors of reasonable understanding, or the trial court erroneously instructed the jury on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, or how the verdict should be entered

on the printed form").

7. Finally, although not raised by either party, we note an error with respect to the merger of certain counts for judgment and sentencing.

Where neither party properly raises and argues a merger issue, this Court has no duty to scour the record searching for merger issues. However, if we notice a merger issue in a direct appeal, as we have here, we regularly resolve that issue, even where [it] was not raised in the trial court and is not enumerated as error on appeal.

Hulett v. State, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014) (citation and punctuation omitted).

The jury found Appellant guilty of felony murder predicated on aggravated assault, felony murder predicated on possession of a knife during the commission of a felony, aggravated assault, and possession of a knife during the commission of aggravated assault. Judge Glanville sentenced Appellant to life imprisonment on the felony murder count predicated on aggravated assault. The court then merged all remaining counts. However, the second felony murder count predicated on possession of a knife during the commission of a felony was vacated by operation of law because the felony murder convictions involved the same victim. Cowart v. State, 294 Ga. 333 (2) (751 SE2d 399) (2013); McClellan v. State, 274 Ga. 819 (1) (a) (561 SE2d 82) (2002). As for the

underlying felonies, the aggravated assault felony merged into the felony murder charge for which Appellant was sentenced. Green v. State, 283 Ga. 126, 130 (2) (657 SE2d 221) (2008) ("When a defendant is convicted of felony murder and is also separately convicted of the felony that served as the underlying felony for the felony murder conviction, the conviction for the underlying felony merges into the felony murder conviction."). Because the second felony murder charge was vacated by operation of law, the underlying felony of possession could not have merged into the second felony murder count. Malcolm v. State, 263 Ga. 369 (5) (434 SE2d 479) (1993) (once a felony murder count has been vacated, the underlying felony cannot merge into the felony murder count). Instead, Appellant should have been sentenced for the separate count of possession of a knife during the commission of the felony of aggravated assault. See OCGA § 16-11-106 (b) (1) and (e); Hawkins v. State, 262 Ga. 193 (3) (a) (415 SE2d 636) (1992). Accordingly, Appellant's sentence is void, and we remand for resentencing.

Judgment affirmed in part and vacated in part and case remanded for resentencing. All the Justices concur.

Decided February 16, 2015.

Murder. Fulton Superior Court. Before Judge Manis, Senior Judge.

Sheueli C. Wang, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General, for appellee.