**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 5, 2022**

# In the Court of Appeals of Georgia

A22A0415. MATTA v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Marlon Matta was convicted of aggravated sodomy,[1] aggravated child molestation,[2] and three counts of child molestation.[3] He appeals the denial of his motion for new trial, arguing that the lack of a complete and accurate transcript of the trial and the exclusion of evidence of allegations of sexual abuse made by the victim against another individual mandated a new trial. For the reasons that follow, we affirm.

---

[1] OCGA § 16-6-2 (a) (2).

[2] OCGA § 16-6-4 (c).

[3] OCGA § 16-6-4 (a).

Construed in the light most favorable to the verdict,[4] the record shows that when the victim's mother was bathing the victim, who was under 10 years of age at the time, she noticed that his rectum was "very red and open." She also noticed changes in the victim's behavior, including soiling his underwear, being distracted in school, and pulling his pants down in preparation for what she believed was a sexual act with his younger cousin. The victim told his mother that Matta "touch[ed] him" during weekly Bible study that the victim, his family, and 10-12 other individuals attended at Matta's home. The victim underwent a forensic interview, during which he reported that Matta had anally penetrated him more than five times during Bible study and that Matta made him watch pornographic movies and look at pornographic magazines. The victim repeated these allegations during trial, explaining that Matta's actions caused him pain and made him feel "like [he] was throwing up."

While being interviewed by police, Matta denied the victim's allegations and denied that the victim had ever been in his bedroom. Matta later contradicted himself, stating that the victim had been in his bedroom at least three times during Bible study and caught Matta watching pornography. During a consent search of Matta's home,

___

[4] See *Cantrell v. State*, 360 Ga. App. 862 (862 SE2d 329) (2021).

police found pornographic magazines and videos in his bedroom in a location consistent with details provided by the victim. Police also confirmed the victim's statement that he could see down the home's hallway through a crack in the door when Matta anally sodomized him.

At the conclusion of the trial, Matta was convicted of aggravated sodomy, aggravated child molestation, and three counts of child molestation. He filed a motion for new trial, which he later amended three times, and the trial court denied the motion after a hearing. This appeal followed.

1. Matta contends that the trial court erred by denying his motion for new trial because the trial transcript is missing a portion of the testimony of one of the State's witnesses. We disagree.

Matta's trial took place over two days in September 2012. In October 2012, Matta moved for a new trial. On March 31, 2016, because the trial transcript had not yet been filed, Matta moved for the court to require the court reporter to produce the transcript or grant him a new trial. On March 31, 2017, Matta amended his motion, seeking a new trial because the transcript was incomplete based on the court reporter's inability to transcribe the testimony of Teresa Wright, a witness for the prosecution.

3

The court reporter, Pam Ellis, produced a 212-page transcript of Matta's trial, which included the testimony of nine witnesses. In the "Certificate of Reporter," Ellis certified all pages of the transcript except for one, which contained the following statement: "As to page number 120 of the within proceedings, the undersigned is unable to certify the completeness of only that page as it relates to the testimony of State's witness Teresa Wright, and the matters set out in reporters hand-written notes quoted in italics on the foregoing page 120 for the reasons stated therein." Page 120 of the transcript contained the following "Reporter's Note": "Due to reporter error, the examination of witness Teresa Wright was unintentionally recorded over. The following *uncertified* notes are the reporter's hand-written notes of the testimony. . . ."[5] Ellis's notes indicated that Wright's testimony began at 2:45 p.m. and ended at 4:20 p.m.[6] According to Ellis's notes, defense counsel did not cross-

---

[5] (Emphasis in original).

[6] The court reporter's notes state:

2:45 P.M. – *Direct/Brasher*: Previously Teresa Thomas. Employed CAC 11 years (all at CAC). I have BA in Psychology. Corner house Child interview training. I follow that protocol. I do 98% of child abuse interviews. Witness tend/adm as expert. I interviewed Jordan (protocol), DVR recorded. From observation room, can view interview on monitor

examine Wright. During Wright's ninety-five-minute testimony, the jury took a twenty-minute break, and the approximately one-hour video of Thomas's interview of J. G. was played.

At the motion for new trial hearing, Ellis testified that she had apparently mistakenly recorded over Thomas's testimony. According to Ellis, excluding the twenty-minute break and the one-hour video, Wright's testimony lasted approximately fifteen minutes. Matta's trial counsel testified at the hearing that he had no specific recollection about Wright's testimony and that he had "no reason to dispute any of [the court reporter's] notes."

The prosecutor also testified, explaining that because Matta's trial was her first child molestation prosecution, she typed out her examination questions in complete sentences and asked them "virtually in the exact order that they . . . are typed out [in the notes.]." According to the prosecutor's notes, which were admitted into evidence,

---

with 2-way radio. *S-15* – Video disk of child interview (tend/adm.) Jury out 2:50, in 3:10 (Break). Interview format, RACTAC. S-15 interview video played (approx. 1 hr. video, ended 4:15 P.M.). *Brasher/contd Direct*: *S-l7* — Paper used in Jordan interview (tend/adm). Not uncommon not to disclose everything in 1st interview; not uncommon disclosure not made for several years. *Mr. Cain* – No questions. Witness excused, 4:20 P.M.

5

Wright conducted the forensic interview of the victim. The prosecutor testified at that hearing that Wright was not "a substantial witness as far as information," and the "main purpose" of her testimony "was to provide information about the [child advocacy center] and how interviews were done and, specifically, how this interview was done and to be able to tender in both the forensic interview and the diagrams at that time." The prosecutor also recalled asking Wright "some general questions about delayed disclosure issues"; she did not ask Wright "anything about specifically what happened in the [forensic] interview [of the victim]."

Following the hearing, the trial court denied the motion for new trial, finding that based on the evidence and testimony produced at the hearing, "the trial transcript in this case is correct and complete."

Certainly, "[a] defendant who is tried and convicted has a right to appeal and a right to a transcript of the trial to use in bringing that appeal[, and a]n appellant who is deprived of an adequate trial transcript has effectively been denied his right to appeal."[7] Although the State has a duty to file a "correct and complete transcript" if

---

[7] (Citations and punctuation omitted.) *Gadson v. State*, 303 Ga. 871, 877 (3) (a) (815 SE2d 828) (2018).

requested by the defendant, failure to fulfill that duty does not automatically entitle the defendant to a new trial.[8] "Instead, OCGA § 5-6-41 (f) and (g) allow any party who contends that the record 'does not truly or fully disclose what transpired in the trial court' to have the record completed either by stipulation of the parties or, if the parties cannot agree, by the decision of the trial court."[9] Subsections (f) and (g) of OCGA § 5-6-41,[10]

---

[8] See id. at 878 (3) (a).

[9] (Punctuation omitted.) Id.

[10] These subsections provide:

(f) Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final

7

construed together, provide for the reconstruction of a missing transcript of the proceedings whether or not the parties agree as to the contents. And while the correctness of such transcript, as determined by the trial judge, is final and not subject to review, OCGA § 5-6-41 (g), whether the transcript is complete pursuant to OCGA § 5-6-41 (f) is reviewable on appeal.[11]

Where all or an important portion of the original verbatim transcript of a trial is lost and the transcript reconstructed pursuant to OCGA § 5-6-41 (f) and (g) is manifestly inadequate, an appellant is not

disposition of the appeal.

(g) Where a trial is not reported as referred to in subsections (b) and (c) of this Code section or where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection, the agreement of the parties thereto or their counsel, entered thereon, shall entitle such transcript to be filed as a part of the record in the same manner and with the same binding effect as a transcript filed by the court reporter as referred to in subsection (e) of this Code section. In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review; and, if the trial judge is unable to recall what transpired, the judge shall enter an order stating that fact.

[11] (Punctuation and emphasis omitted.) *Bamberg v. State*, 308 Ga. 340, 347 (2) (839 SE2d 640) (2020).

required to specify how he has been harmed by a particular error that may have occurred at trial but is now buried in unrecorded history. But where, as here, an otherwise verbatim transcript is missing only one or a few parts of the trial, the appellant is not entitled to a new trial unless he alleges that he has been harmed by some specified error involving the omitted part and shows that the omission prevents proper appellate review of that error.[12]

In this case, Matta has failed to produce any evidence in support of his argument that the recreated record is incomplete, nor has he raised any specific objection with the reconstructed testimony.[13] Furthermore, he has not alleged that he

---

[12] (Citation omitted.) *Gadson*, 303 Ga. at 878 (3) (a), citing *Johnson v. State*, 302 Ga. 188, 197-198 (3) (c) (805 SE2d 890) (2017) (collecting cases).

[13] We find meritless Matta's argument that "no transcript of the missing testimony can be reliably recreated" because this appeal involves a conflict of interest between him and trial counsel. See *Bamberg*, 308 Ga. at 350, n. 9 (rejecting a similar argument because the "[t]rial counsel would have been aiding in the reconstruction of the transcript, not using the transcript to demonstrate any error. Moreover, [Matta's] appellate counsel called [his] trial counsel at the hearing on [his] motion for new trial, and [he] . . . questioned [Matta's] trial counsel . . . about matters occurring during the trial, as has been done in numerous appeals . . . in which appellants contended that they received ineffective assistance of trial counsel. Moreover, in many of [the Supreme Court of Georgia's] prior decisions on a reconstructed record, a defendant's trial counsel testified as part of the efforts at reconstruction, whether by affidavit or at a hearing held for that purpose."), citing *Mosley v. State*, 300 Ga. 521, 524 (2) (796 SE2d 684) (2017); *Leeks v. State*, 296 Ga. 515, 517 (2) (769 SE2d 296) (2015); *State v. Nejad*, 286 Ga. 695, 695-696 (1) (690 SE2d 846) (2010).

was harmed by any error involving Wright's testimony. Accordingly, the trial court did not err by denying Matta's motion for new trial on this basis.[14]

2. Matta further argues that the trial court erred by excluding evidence that the victim made prior allegations of sexual abuse against another individual. We find no basis for reversal.

In prosecutions for child molestation, Georgia's Rape Shield Statute prohibits testimony regarding a complaining witness's past sexual behavior, but it does not prohibit testimony regarding previous false allegations by the complaining witness. Before such evidence can be admitted, however, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists. In this context, a reasonable probability is a probability sufficient to undermine confidence in the outcome. Defendants have the burden of coming forward with evidence at the hearing to establish a reasonable probability that the victim had made a prior false accusation of sexual misconduct. We will not disturb the trial

---

[14] See *Gadson*, 303 Ga. at 878 (3) (a), citing *Brockman v. State*, 292 Ga. 707, 716 (5) (b) (739 SE2d 332) (2013) (affirming denial of motion for new trial because the defendant did not establish harm or show that he was prevented from raising issues on appeal based on four missing trial exhibits); *Ruffin v. State*, 283 Ga. 87, 88 (6) (656 SE2d 140) (2008) (affirming conviction because defendant failed to allege specific harm from the absence of a transcript of voir dire, opening statements, bench conferences, and the polling of the jury); *Smith v. State*, 251 Ga. 229, 230 (2) (304 SE2d 716) (1983) (holding allegation of general harm insufficient because the defendant failed "to show how he was harmed or to raise any issue which this Court is unable to adequately review because of skips in the record").

court's determination on this threshold issue absent an abuse of discretion.[15]

Here, the State filed a motion in limine to exclude any testimony or reference to prior sexual accusations the victim made against individuals other than Matta. During the trial, defense counsel argued that he should be permitted to cross-examine the mother about an incident in which she found the victim in an act of a sexual nature with another child; when the mother asked the victim "where he learned it[,] . . . another person [– Axel –] may [have] come up."[16] In response, the State argued that the victim did not mention Axel, by name or otherwise, during his forensic interview, that the State had no evidence regarding Axel, and that the victim's statement did not constitute a false allegation. After hearing the argument of counsel, the trial court ruled that the defense had to "stay away from . . . the name, [Axel]. . . . Just the name. . . ," finding that there was no evidence that the victim's statement about Axel was false.

---

[15] (Citations and punctuation omitted.) *Vallejo v. State*, 362 Ga. App. 33, 34 (1) (865 SE2d 640) (2021) (en banc), citing *State v. Parks*, 350 Ga. App. 799, 811 (2) (830 SE2d 284) (2019), disapproved of on other grounds by *State v. Hill*, 361 Ga. App. 230, 235 (2) (b) (863 SE2d 699) (2021); OCGA § 24-4-412 (a).

[16] At that time, the victim identified Matta as the person who sexually abused him.

Pretermitting whether Matta made a proper proffer of the mother's testimony regarding the victim's mention of Axel's name,[17] Matta failed to establish the falsity of the purported prior false sexual allegation. There was no evidence about what Axel "taught" the victim, any evidence regarding the specifics of any sexual acts performed by Axel on or in the presence of the victim, or any information upon which the trial court could have determined that the allegations regarding Axel were false. "Accordingly, in light of the evidence before the trial court, we do not find that the trial court abused its discretion in excluding this evidence at trial."[18]

*Judgment affirmed. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[17] Although defense counsel summarized the expected testimony, counsel did not question the mother about the victim's mention of the other individual, either during the motion in limine presentation, during trial, or at the motion for new trial hearing. See *Parks*, 350 Ga. App. at 812 (noting that a trial court is "required" to "conduct[] a pretrial hearing and [take] testimony" from witnesses in order to make a determination about the falsity of a victim's prior false allegation).

[18] Id. at 813 (2).