## A11A0638. LEEKS v. THE STATE.
(710 SE2d 908)

SMITH, Presiding Judge.

A jury found Etroma Leeks guilty of aggravated assault. Following the denial of his motion for new trial, Leeks appeals, alleging that the trial court erred in denying his motion to suppress and in instructing the jury that it could consider the level of certainty of the witness's identification. Leeks also asserts that the evidence was

---

insufficient to sustain his conviction. Having reviewed these claims, we find no error and affirm.

Construed in favor of the verdict, the evidence revealed that the 19-year-old victim was selling hats in her neighborhood when Leeks approached her and asked her "how much." The victim told Leeks that she was selling the hats for five dollars, and Leeks told her that he had the money to purchase one upstairs in his apartment. The victim followed Leeks into his apartment and into a bedroom where she sat on the edge of the bed. Leeks offered the victim two dollars, but the victim refused telling Leeks that the hat cost five dollars. Leeks then offered the victim a "sack of crack" in exchange for "some sex." The victim refused Leeks's offer and threatened to leave if Leeks did not pay her for the hat. In response, Leeks told the victim "you're not fitting [sic] to go nowhere. I'm fitting [sic] to shoot you in the head." Leeks retrieved a gun from the living room, held it to the victim's head, and put his hand around her neck. Leeks fired the gun once, but it misfired. The victim struggled with Leeks, and after a few moments was able to break free. Leeks then told the victim, "b***h, get out of my house." The victim walked backward out of the apartment for fear that Leeks would shoot her.

Frantic and screaming, the victim ran out of the apartment and down the road where she collapsed. Her mother came to the scene and called police. The victim told police that she knew her assailant as "Charles." She was taken to a hospital where a detective presented her with a picture of Leeks. Upon looking at the picture, the victim identified Leeks as her assailant.

The police apprehended Leeks based on information from the victim and other individuals in the neighborhood who also knew Leeks as "Charles." After securing a search warrant for Leeks's apartment, officers searched the apartment and found an air pistol. The victim identified the air pistol as the one Leeks pointed at her.

1. Leeks argues that the evidence was insufficient because the State failed to produce sufficient evidence identifying Leeks as the assailant. But under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence outlined above was sufficient for a rational trier of fact to find beyond a reasonable doubt that Leeks was guilty of aggravated assault for pointing an air pistol at the victim and threatening to kill her. See OCGA § 16-5-21 (a) (2); see also *Bartlett v. State*, 244 Ga. App. 49, 51 (537 SE2d 362) (2000).[1]

---

[1] Leeks also argues that the evidence was insufficient because the indictment alleges that he pointed an air rifle at the victim, but at trial the State claimed that he pointed an air *pistol* at the victim. But "[t]here is a longstanding rule in Georgia 'that no fatal variance between the pleading and the proof exists where one weapon is charged in the indictment and a weapon of

2. Leeks contends that the trial court erred in denying his motion to suppress the victim's pre-trial identification of him as the perpetrator because the display of a single photograph of him following the attack was impermissibly suggestive. Leeks argues that there was a substantial likelihood of irreparable misidentification given the victim's lack of maturity and because the victim was in a state of panic. He alleges the victim did not provide police with a description of her assailant prior to being shown his picture. When reviewing a trial court's ruling on a motion to suppress, we construe the evidence favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010).

At a hearing on the motion to suppress, the victim testified that she had seen Leeks in the neighborhood, that she had a good look at him, and that she was in the apartment with Leeks for about 30 minutes. She stated further that she gave the officer on the scene a description of her attacker prior to the officer showing her a picture of Leeks. She described Leeks as a "tall, kind of chubby, little bit older guy, had a bald spot right here . . . black." The victim explained that she was taken to the hospital about an hour after she was in the apartment with Leeks and that a detective showed her a picture of Leeks while she was there. She testified that she was "certain, real quick" that the man in the picture was the man who attacked her.

A detective testified that after the officer on the scene detained Leeks based on information from individuals in the neighborhood, he took a picture of Leeks. He stated further that the victim did not hesitate in identifying Leeks when he showed her the picture of him while she was in the hospital.

In denying the motion to suppress, the trial court ruled that the "identification procedure that was used is akin to a show-up because, in fact, that's what happened. They just took a photograph of Mr. Leeks and took that to the victim and asked her whether she was able to identify it after asking her if she could provide a description, which she did." The court found further that (1) when shown the picture, the victim was 100% sure it was Leeks, (2) the victim identified Leeks at the hearing and testified that she had seen him in the neighborhood, and (3) the length of time between the crime and the identification was not long.

"[A] conviction which relies on eyewitness identification at trial following a pre-trial photographic identification will be reversed only

---

a similar nature capable of inflicting the same character of injury is shown by the evidence.' " (Citations, punctuation and footnote omitted.) *Wilson v. State*, 291 Ga. App. 69, 72 (1) (b) (661 SE2d 221) (2008).

if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citations and punctuation omitted.) *Wright v. State*, 302 Ga. App. 101, 105 (4) (690 SE2d 220) (2010). And we have held that displaying a single photograph to a witness is impermissibly suggestive. See id. But such evidence "should be suppressed only if a substantial likelihood of irreparable misidentification exists." (Citations and punctuation omitted.) *McBride v. State*, 297 Ga. App. 421, 422 (677 SE2d 438) (2009). The factors to be considered in evaluating the likelihood of misidentification include "(1) the witness' opportunity to view the criminal during the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description given by the witness; and (4) the length of time between the crime and the showup confrontation." (Citation, punctuation and footnote omitted.) *Crawford v. State*, 297 Ga. App. 187, 191 (2) (676 SE2d 843) (2009).

Here, the trial court's ruling was supported by evidence that the victim (1) knew Leeks from the neighborhood; (2) described him to an officer on the scene; (3) spent 30 minutes or more with Leeks in an apartment talking with him then defending herself against his attack; (4) quickly and confidently identified Leeks as her assailant upon seeing his picture; and (5) identified Leeks at the hearing on the motion to suppress and at trial. See *Crawford*, supra at 191 (2); see also *Jennings v. State*, 277 Ga. App. 159, 163 (3) (626 SE2d 155) (2006) (identification reliable under the circumstances). In this case, the trial court did not clearly err in denying Leeks's motion to suppress on this ground.

3. Finally, Leeks argues that the trial court erred in instructing the jury that it could consider a witness's level of certainty in evaluating the reliability of his or her identification in violation of *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005). But Leeks failed to object following the court's instruction and failed to reserve the right to challenge this portion of the charge at a later time, reserving objections only to other issues discussed in the charge conference. "The failure to reserve objections to the content of the jury instructions waives the right to assert the purported error on motion for new trial or on appeal." (Citation and punctuation omitted.) *Sampson v. State*, 282 Ga. 82, 85 (5) (646 SE2d 60) (2007) (claim that court erred in charging jury on level of certainty waived where counsel did not object or reserve objections).[2]

*Judgment affirmed. Mikell and Dillard, JJ., concur.*

[2] We note that Leeks was tried before the effective date of OCGA § 17-8-58 (appellate review of failure to object to jury charge is precluded unless charge constitutes plain error).

DECIDED JUNE 1, 2011.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.