In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A0882.  WALKER v. THE STATE.
S14A0883.  FLOWERS v. THE STATE.

NAHMIAS, Justice.

Appellants Robert Walker and Tasha Flowers were tried together and convicted of felony murder and possession of a firearm during the commission of a felony following a drive-by shooting into a bar in Columbus, Georgia.  On appeal, Walker contends only that the trial court erred in failing to give the complete pattern instruction on circumstantial evidence.  Flowers contends that the trial court erred in failing to grant her motion for new trial because the jury's verdict was against the weight of evidence; in overruling her motion to exclude identification testimony; in failing to give a proper curative instruction regarding a detective's testimony; and in failing to grant her motion for mistrial because a witness violated the court's pretrial ruling limiting his testimony.  We affirm the convictions of both Appellants.[1]

---

[1] The crimes occurred on October 4, 2002.  On April 22, 2003, Walker and Flowers were indicted together by a Muscogee County grand jury on charges of malice murder, felony murder,

1.	(a)	Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following.  On the night of October 4, 2002, the

---

aggravated assault, and possession of a firearm during the commission of a felony.  Walker was also charged with possession of a firearm by a convicted felon, but that charge was later dead-docketed.  At a joint trial held on September 15-18, 2003, the jury found both Appellants not guilty of malice murder but guilty of the remaining charges.  The aggravated assault verdicts merged into the felony murder convictions for sentencing purposes.

The trial court sentenced Walker to life in prison without the possibility of parole for felony murder and five consecutive years for the firearm offense.  On October 26, 2004, the court granted Walker's motion for an out-of-time appeal, and two days later, he filed a motion for new trial, which was amended more than five years later on July 29, 2009, and again on December 6, 2012.  The trial court held an evidentiary hearing on March 29, 2013, and on May 6, 2013, the court re-sentenced Walker on the murder count to life with the possibility of parole because the relevant statute in effect at the time of sentencing excepted capital felonies from mandatory no-parole punishment.  On January 9, 2014, the court denied Walker's motion for new trial, and he filed a timely notice of appeal.

The trial court sentenced Flowers to life in prison with the possibility of parole for felony murder and five consecutive years for the firearm offense.  She filed her first motion for new trial through trial counsel on October 15, 2003; a pro se motion for new trial (after her trial counsel withdrew) on October 17, 2007; another motion for new trial through new counsel on December 9, 2008; and an amended motion for new trial through her trial counsel, who had been retained again, on January 5, 2010.  The trial court held evidentiary hearings on March 29, 2010, and December 11, 2012, and denied the motion for new trial on January 22, 2013.  Flowers then timely filed a notice of appeal.

The two appeals were docketed to the April 2014 Term of this Court, consolidated for decision, and submitted for decision on the briefs.  Given that we received these direct appeals more than a decade after this murder case was tried, it is appropriate to reiterate, once again, that

> extended delays in proceedings on motions for new trial "put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial," and . . . "it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay."

Arnold v. State, 292 Ga. 268, 273 & n.5 (737 SE2d 98) (2013) (citation omitted).  "Nevertheless, any failure to discharge that duty in this case 'does not affect the outcome of this appeal . . . because [Appellants have] enumerated no error associated with the delay.'"  Id. (citation omitted).

2

victim, Robert Stephens, walked to the Interlude Bar from his house down the street. While he was at the bar, a man came inside and said that someone was trying to break into cars in the parking lot. A patron then brought a bicycle inside the bar so it would not be stolen. The bicycle belonged to Carlos Flowers. When Carlos came into the bar to retrieve his bike, he was confronted by patrons about the attempted break-ins. He went back outside, but was followed by patrons and beaten up in the parking lot. Stephens, who lived next door to Carlos, broke up the fight and helped Carlos get away. Carlos ran down the street to his house.

Carlos's cousin, Robert Walker, and his sister, Latasha Flowers, were at the house. Shortly after Carlos came home, a neighbor, Nicolas Perry, saw two people get into a car parked by the house and drive down the street to the bar. The car stopped in front of the bar, and a patron heard a female voice yell that everyone inside the bar was going to die. The car then turned around, and as it passed the bar again, at least six shots were fired with a 9mm pistol out of the passenger window toward the open doorway of the bar. Stephens, who was sitting on a barstool, was struck under the eye by one of the bullets; he died on the way to the hospital. Perry then saw the car return to the Flowers house, saw

3

Walker and Flowers standing by the car once it parked, and then heard Walker say something about family business.

Another witness from the neighborhood, Hanalei Kaililaau, had also seen the car drive out of the cul de sac where the Flowers home was located; Kaililaau then heard gunshots and saw the car stopped in front of the bar with smoke coming out of the passenger side. When the car returned to the Flowers house moments later, Kaililaau saw Flowers and Walker get out, with Walker holding a gun and saying "we took care of the family, we took care of business." After Walker was arrested, he bragged to another inmate, Charles Edge, while they were in a holding cell together at the Sheriff's Office, that he had killed a man during a drive-by shooting in revenge for a fight.

(b) Although only Flowers disputes the sufficiency of the evidence supporting her convictions, we address the issue as to both Appellants, in accordance with this Court's practice in murder cases.[2] After reviewing the

---

[2] We note that Flowers frames her argument as a claim that the verdict was against the weight of the evidence, which is a general ground on which the trial court may grant a new trial. See OCGA § 5-5-21. However,

> "[t]he decision to grant a new trial on the grounds that the verdict is against the weight of evidence is one that is solely in the discretion of the trial court. . . . Whether an appellant is asking this court to review a [trial] court's refusal to grant a new trial or its refusal to grant a motion for directed verdict, this court can only

record, we conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find both Walker and Flowers guilty beyond a reasonable doubt of the crimes for which they were convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-21 (defining parties to a crime).

Flowers argues that the family members and friends who testified on her behalf that she was at a friend's house at the time of the shooting were more believable than the witnesses who implicated her in the crimes. That was, however, a matter to be decided by the jury that saw and heard the testimony, not by an appellate court reviewing a transcript. See Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

---

review the case under the standard espoused in Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979) to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict."

Batten v. State, ___ Ga.___ (___SE2d___) (Case No. S14A0941, decided June 30, 2014) (citation omitted).

2.    During the charge conference, the trial court said that it would give the "definition of direct and circumstantial evidence" from the pattern jury instructions. The court then instructed the jury as follows:

> Evidence under the law may be either direct or circumstantial or both. Evidence may also be used to prove a fact by inference. This is referred to as circumstantial evidence. Circumstantial evidence is the proof of facts or circumstances, by direct evidence, from which you may infer other related or connected facts that are reasonable and justified in the light of your experience.

The court did not give the remainder of the pattern charge on circumstantial evidence, which said: "To warrant a conviction on circumstantial evidence the proven facts should not only be consistent with the hypothesis of guilt, it [sic] shall exclude every other reasonable hypothesis as to the guilt of the accused."[3] After the court finished the jury instructions, Walker reserved the right to make objections, which under the law at the time of this trial in 2003 was generally sufficient to allow instructional errors to be raised for the first time on motion for new trial or on appeal. See Pruitt v. State, 282 Ga. 30, 33 & n.2 (644 SE2d 837) (2007); White v. State, 243 Ga. 250, 250 (253 SE2d 694)

---

[3] This part of the pattern charge was based on the text of former OCGA § 24-4-6; that statute has been repealed, but the same text is included in the new Evidence Code as OCGA § 24-14-6.

(1979). Compare OCGA § 17-8-58 (effective for trials after July 1, 2007).

Walker's only contention on appeal is that the trial court erred in failing to give the complete pattern jury instruction on circumstantial evidence.

However, as the trial court noted in its order denying Walker's motion for new trial, he never made a written request that the court give the entire pattern charge on circumstantial evidence; we also note that the court said at the charge conference only that it would instruct the jury on the *definition* of circumstantial evidence, not that it would give the entire pattern charge. Absent a written request, a trial court is required to charge on the law of circumstantial evidence as set forth in former OCGA § 24-4-6 and current § 24-14-6 only if the State's case against the defendant is wholly circumstantial. See Massey v. State, 270 Ga. 76, 77 (508 SE2d 149) (1998); Stubbs v. State, 265 Ga. 883, 884 (463 SE2d 686) (1995). In this case, the State presented both direct and circumstantial evidence against Walker. Indeed, Walker concedes that the State presented direct evidence of his guilt from two eyewitnesses and from the inmate to whom Walker admitted committing the drive-by murder. Walker contends that these witnesses were impeached, making the direct evidence less than overwhelming; that may be, but it is clear that this was not a wholly circumstantial case.

Because the State presented direct evidence that Walker committed the crimes and he did not request the circumstantial evidence instruction in writing, the trial court did not commit reversible error in failing to give that charge, particularly where the court instructed the jury on the definition of circumstantial evidence and gave a full instruction on reasonable doubt. See Evans v. State, 288 Ga. 571, 576 (707 SE2d 353) (2011); Thompson v. State, 283 Ga. 581, 582 (662 SE2d 124) (2008).

### Case No. S14A0883 (Flowers v. The State)

3. Flowers argues first that the trial court erred in denying her motion to exclude identification testimony from Hanalei Kaililaau, because the police showed him only a single photograph of Flowers rather than her photo among photos of other women.

> If an out-of-court identification by a witness is suggestive and conducive to a "'very substantial likelihood'" of misidentification, evidence of that out-of-court identification violates due process and is inadmissible at trial. Similarly, if the same suggestive out-of-court identification can be said to lead to "'a very substantial likelihood of irreparable misidentification,'" an in-court identification of the defendant would also violate due process and would be inadmissible. With regard to evidence of either the out-of-court or in-court identification, "[i]t is the likelihood of misidentification which violates a defendant's right to due process."

8

In determining whether there is a substantial likelihood of misidentification, the "totality of the circumstances" is to be considered. Under this test,

> "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Moreover, whether the witness knows the defendant is a critical factor in determining the reliability of an identification.

State v. Hattney, 279 Ga. 88, 89 (610 S.E.2d 44) (2005) (footnotes omitted).

Applying these standards in Gibson v. State, 283 Ga. 377 (65 SE2d 372) (2008), this Court held that where the witness knew the defendant's street and legal names and had known and had regular contact with him for seven years, the trial court did not err in refusing to suppress the witness's identification, because "showing [the witness] a single photograph of [the] defendant merely confirmed her previous identification of him" and thus created no substantial likelihood of misidentification. Id. at 378-379. Similarly, in Leeks v. State, 309 Ga. App. 724 (710 SE2d 908) (2011), the Court of Appeals held that even though the police used a single photograph for identification, there was no substantial likelihood of misidentification because, among other reasons, the

9

witness knew the defendant from the neighborhood.  See id. at 726-727.  See also Pruitt v. State, 270 Ga. 745, 751-752 (514 SE2d 639) (1999) (holding that there was no substantial likelihood of misidentification even though the witness may have been subjected to an impermissibly suggestive photo lineup, since the witness testified that she recognized the defendant as a regular customer at her store).

Here, Kaililaau testified that, before identifying Flowers's photo, he had lived down the street from her for 11 years and had spent a lot of time with the Flowers family; he went to school with Flowers's sister and knew what Flowers looked like.  Kaililaau went to the Flowers house right after the shooting, and she walked past him as she got out of the car used in the drive-by shooting.  Kaililaau gave Flowers's first and last name to the police, who only then showed him her photo to confirm that he was in fact referring to Flowers.  Under these circumstances, the presentation to the witness of a single photograph of the defendant created no substantial likelihood of misidentification, and the trial court correctly denied the motion to exclude the witness's identification testimony.  See Gibson, 283 Ga. at 378-379.

4.    Flowers argues next that the trial court erred in failing to give a

proper curative instruction regarding a detective's improper testimony. At trial, the detective was asked if he "ever [made] an arrest in the case involving Carlos, the beating?" He replied, "Because once I established that Mr. Robert Walker and Latasha Flowers were the persons that conducted this drive-by shooting of the Interlude Club –." Flowers interrupted with an objection, arguing that the answer was an improper conclusion and asking the court to strike the answer and give a limiting instruction to the jury. The court sustained the objection and instructed the jury, "You may disregard, jury, please, the conclusion made by the officer about what he established." Flowers did not take exception to the court's curative action, and her acquiescence in it waives any claim of error on appeal. See Jeffers v. State, 290 Ga. 311, 315 (721 SE2d 86) (2012). In any event, given the sustaining of Flowers's objection, the prompt curative instruction for the jury to disregard the detective's non-responsive and conclusory statement, and the testimony the jury heard from other witnesses establishing Flowers's role in the drive-by shooting, we would find no harmful error with respect to this enumeration.

5.    Before trial, Flowers moved to exclude as hearsay any testimony by Charles Edge, the inmate who had been locked up with co-defendant Walker,

11

implicating her based on what Walker had told him. The trial court ruled that Edge would be limited to testifying that Walker said that he had done the drive-by shooting as a passenger in a moving vehicle, and the prosecutor notified Edge of the court's ruling before he testified at trial.[4] Nevertheless, when asked by the prosecutor if Walker was a passenger in the car during the drive-by shooting, Edge replied, "He was a passenger in the car because he said it was some lady – was driving the car." The prosecutor tried to interrupt Edge after he said "lady," but he completed the answer.

Flowers then moved for a mistrial based on violation of the pretrial ruling and objected on the ground of hearsay. The trial court denied the motion for mistrial but instructed the jury to disregard Edge's statement, saying:

> Members of this Jury, during a portion of the testimony on direct examination of this witness on the witness stand some remark was made by him where he said something to the effect that he was told that a lady was driving the car. I instruct you, Members of this Jury, that you may not consider that testimony in connection with this case. You shall disregard that portion of his answer. You will give it no weight whatsoever in your consideration of the evidence in this case.

Flowers made clear that she was preserving her motion for mistrial, and on

---

[4] Neither party challenges this ruling on appeal, and we express no opinion about it.

12

appeal she argues that the trial court erred in failing to grant it.

"'Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial.'" Watson v. State, 289 Ga. 39, 42 (709 SE2d 2) (2011) (citation omitted). Here, there is no indication that the prosecutor intended to elicit the fleeting testimony at issue; the witness never identified the "lady" and never mentioned Flowers at all; the court immediately gave the jury a strong curative instruction; and there was substantial other evidence that Flowers was driving the car during the drive-by shooting. Under these circumstances, a mistrial was not essential to preserve Flowers's right to a fair trial, and the trial court did not abuse its discretion in denying her motion. See Jones v. State, 277 Ga. 36, 40 (586 SE2d 224) (2003) (holding that the trial court did not abuse its discretion in denying a motion for mistrial where a curative instruction was given to the jury to disregard the testimony of a police officer who used the term "barricade" in violation of a pretrial ruling).

Judgment affirmed. All the Justices concur.