In the Supreme Court of Georgia

Decided: November 17, 2014

S14A1338. LEWIS v. THE STATE.

NAHMIAS, Justice.

Appellant Brandon Lewis was convicted of felony murder and other crimes in connection with the shooting death of Deonte Hudson. On appeal, he argues only that the evidence presented at trial did not support his convictions. We affirm.[1]

1.    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Hudson lived with his mother in the Bowen Homes apartment complex in Atlanta. On the morning of November 13, 2007, his mother sent him to a nearby store to buy stamps. As Hudson walked

---

[1] Hudson was killed on November 13, 2007. On November 17, 2009, Appellant was indicted in Fulton County for malice murder, two counts of felony murder, criminal attempt to commit armed robbery, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. The case was tried from May 24 to 28, 2010. The trial court granted Appellant's motion for a directed verdict of acquittal on the charge of criminal attempt to commit armed robbery and the related felony murder count. The jury then found Appellant not guilty of malice murder but guilty of the remaining charges. The trial court sentenced him to serve life in prison for felony murder based on aggravated assault and five consecutive years for the firearm conviction; the aggravated assault count merged. Appellant filed a timely motion for new trial, which he amended on December 16, 2011. After an evidentiary hearing, the trial court denied the motion on April 10, 2012. Appellant filed a timely notice of appeal, and after a delay in obtaining the record from the trial court clerk, the case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

to the store, Appellant, who was then 16 years old, 14-year-old Montrez Huff, and two other boys positioned themselves near Hudson's apartment and waited for him to return.[2] As Hudson approached, the boys signaled to each other, and Appellant then confronted Hudson on the patio of the apartment. The two began fighting, and Hudson hit Appellant in the face several times. Hudson then ran across the street to escape, but Appellant pulled out a gun and shot him in the right buttock; the bullet tore into Hudson's abdomen, severing an artery and causing massive internal bleeding. He collapsed beside a dumpster, and Appellant, Huff, and the other two boys fled the scene. Hudson was still alive when an ambulance arrived, but he died at the hospital later that day.

After the shooting, Appellant took a MARTA bus to school. When he got to school late, he went to the nurse's office complaining of a headache. His clothes were rumpled; his eyes were puffy; and he vomited shortly after arriving. Appellant told the nurse that he ran into a wall at a MARTA station that morning, and he paced nervously as he repeatedly said that he wanted to go home. The nurse called Appellant's grandmother to take him home, but when

---

[2] Huff was indicted with Appellant, but two weeks before trial, Huff offered to testify against Appellant and their trials were severed. The State dismissed all charges against Huff a few days after Appellant's trial concluded. The record does not indicate whether the other two boys were indicted or even identified.

Appellant found out that she would have to take the bus to get him, he walked out of the office and left the school.

Two days after the shooting, Appellant gave a videotaped statement to the police, which was later played for the jury at trial. Appellant, who acknowledged that his nickname was "Shortneck," said that he visited a friend at Bowen Homes on the morning of November 13 before arriving at school at 10:00 a.m. When an officer asked about Appellant's bruised eye, he said that he ran into a wall at Bowen Homes while running to catch a bus to school.

At trial, two witnesses identified Appellant as the boy who shot Hudson. Amber Askew lived across the street from Hudson's apartment and saw the entire incident. Although she initially told the police that she could not identify the shooter because of a sty in her eye, she later told a detective that she saw a boy she knew as Shortneck shoot Hudson. At trial, Askew identified Appellant as Shortneck and explained that she initially lied to the police because she did not want to get involved. The second witness was Huff, who testified that on the morning of November 13, two boys woke him by throwing rocks at his window. Shortly after joining the boys outside his apartment, Huff saw Appellant, whom Huff called Shortneck, running through the patios outside of

Hudson's building. Huff then watched as Appellant and Hudson fought. When Appellant pulled out a gun, Huff turned and ran, hearing a single gunshot as he reached his apartment door.

2. Appellant argues first that the evidence presented at trial was legally insufficient to support his convictions because the State's two key witnesses, Askew and Huff, were so unreliable that their testimony should be considered circumstantial rather than direct evidence. Thus, Appellant continues, this case is governed by former OCGA § 24-4-6, which said, "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[3]

However, direct evidence from a witness who observed a crime is not converted into circumstantial evidence by the witness's credibility or lack thereof. And whether a witness's testimony should be believed is "a matter to be decided by the jury that saw and heard the testimony, not by an appellate court reviewing a transcript." Walker v. State, Case Nos. S14A0882,

_____

[3] This case was tried under Georgia's old Evidence Code. Former OCGA § 24-4-6 is carried forward in the new Evidence Code as OCGA § 24-14-6.

S14A0883, decided Sept. 22, 2014 (2014 WL 4667527, at *2). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). When viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

3. Appellant also argues that the trial court erred by failing to direct a verdict of acquittal on all counts and by failing to exercise its discretion to grant a new trial based on the weight of the evidence. However,

> "[w]hether an appellant is asking this court to review a [trial] court's refusal to grant a new trial [on the general grounds] or its refusal to grant a motion for directed verdict, this court can only review the case under the standard espoused in Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict."

Walker, 2014 WL 4667527, at *2 n.2 (citation omitted). And we have concluded in Division 2 above that the evidence presented in this case was legally sufficient under the Jackson v. Virginia standard.

Judgment affirmed. All the Justices concur.

5