In the Supreme Court of Georgia

Decided:   September 14, 2015

S15A0891. HILL v. THE STATE.

NAHMIAS, Justice.

Appellant Jarmal Hill was convicted of felony murder and numerous other crimes in connection with a home invasion that resulted in the shooting death of his accomplice, Calvin Lavant. On appeal, he contends only that the evidence presented at trial was insufficient to support his convictions. We affirm.[1]

1.    On the night of May 2-3, 2009, Terrion Key and Charles Bailey hosted a party for a group of about a dozen friends at their apartment in College

[1] The crimes occurred on May 3, 2009. On February 15, 2011, a Fulton County grand jury indicted Appellant for three counts of felony murder, ten counts of armed robbery, 11 counts of aggravated assault with a deadly weapon, 11 counts of false imprisonment, burglary, attempted rape, and four counts of possession of a firearm during the commission of a felony. Trial began on March 7, 2011, and on March 15, the jury found Appellant guilty of all charges. The trial court sentenced him to serve life in prison for felony murder; a consecutive term of ten years for each count of false imprisonment, running concurrently with each other; a consecutive term of ten years for attempted rape; and a consecutive term of five years for each of three counts of possession of a firearm during the commission of a felony, running concurrently with each other, plus a consecutive term of five years for the fourth firearm conviction. The remaining guilty verdicts merged or were vacated by operation of law. On March 21, 2011, Appellant filed a motion for new trial, which he amended on April 11, 2013. After an evidentiary hearing, the trial court denied the motion on May 29, 2013. Appellant filed a timely notice of appeal directed to the Court of Appeals, which properly transferred the case to this Court on December 18, 2014. See Neal v. State, 290 Ga. 563, 569-570 (722 SE2d 765) (2012) (Hunstein, C.J., concurring). The case was docketed here for the April 2015 term and submitted for decision on the briefs.

Park.  Around 3:00 a.m., Appellant and Lavant, who lived in the same apartment complex, entered the apartment through an open sliding glass door.  Appellant was armed with a black handgun and Lavant had a silver revolver; both men were dressed in black clothes and wore caps along with bandanas covering their noses and mouths.  Appellant and Lavant ordered everyone in the apartment to lie on the floor and took their wallets, cell phones, and other valuables.  Two former United States Marines, Sean Barner and James Adams, were attending the party but had gone outside briefly a few minutes before the home invasion; when they returned, they too were ordered at gunpoint to lie on the floor, and Appellant and Lavant took their cell phones, a wallet, and an iPod.

Appellant and Lavant ransacked the apartment for other items of value, and then decided to separate their male and female prisoners.  The men were forced at gunpoint to go into the back bedroom and lie on the floor there, and two of the female guests were forced into the other bedroom, while the other two female guests remained in the living room.  Lavant said to Appellant, "we are about to have sex with these girls, then we are going to kill them all."  Barner heard Appellant and Lavant discussing condoms and the number of bullets in their guns, and he decided that he needed to act.  He had brought his

2

book bag to the party, with his pistol in it, and, fortuitously, the bag was behind the bed in the bedroom where he was lying.

Barner took out his gun, stood up, and walked down the hallway into the living room with Adams following closely behind him. Barner saw Appellant standing by the front door of the apartment looking out and opened fire on Appellant, who ran out the sliding glass door. Barner then rushed back to the bedroom where Lavant was holding two of the women, shouted for everyone to get down, and broke down the door with his shoulder. Lavant had ordered the two women to bend over the bed, pulled one of the women's underwear aside, and placed a condom over his penis. When Barner crashed into the room, Lavant started shooting at him. Barner fired back at Lavant, who fled through a window. Lavant was shot in the face and thigh, and one of the women in the room was hit in the arm and both legs, but she survived. The victims called 911.

Appellant and Lavant both fled towards Lavant's building in the apartment complex. Lavant collapsed in the bushes outside his building, but Appellant continued on to the home of Lavant's neighbor, Renaldo Weekes. Appellant arrived at Weekes's door wearing all black and appearing "shook up" and "nervous." He told Weekes that Lavant had been shot and was lying outside

3

in the bushes, and after Weekes looked out the window and saw Lavant lying there, he called 911. Appellant claimed that Lavant had asked him to meet up at the front of the apartment complex because Lavant was being shot at, and when Appellant got there, he saw Lavant jump out of a window and then he and Lavant both started running.

The police arrived to process the crime scene and began interviewing witnesses. Weekes called officers over to help Lavant, who was taken to the hospital but pronounced dead on arrival. The police found Appellant's cell phone near Lavant's body and property stolen from the victims nearby. Appellant stayed in Weekes's apartment until the police were gone; Weekes then saw Appellant place a black handgun in Lavant's apartment before leaving for his hometown of Cordele, Georgia.

Later that morning, Lavant's roommate, Anthony Floyd, called Appellant, who told Floyd that Lavant had gotten shot when he went to a party to rob it. Floyd also spoke to Lavant's older brother, Casey Lewis, who then talked to Appellant. Appellant admitted to Lewis that he went with Lavant to rob a group of people and Lavant let one of the victims "slip off . . . and get to them." Appellant was arrested in Cordele two days after the home invasion.

4

Barner and Key identified Appellant in court as the surviving assailant. Other testifying victims consistently described the surviving assailant as heavy-set and dark-skinned, as Appellant was, and said he carried a black handgun.

2. Appellant's sole contention is that the evidence presented at trial was legally insufficient to support his convictions. We disagree.

(a) Appellant argues first that the evidence was insufficient to support his convictions under the federal due process standard. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LEd2d 560) (1979). Specifically, he asserts that the in-court identifications of him by Barner and Key were unreliable because they were not asked to identify him in a photographic lineup before trial and their testimony about the appearance of the surviving assailant differed to some extent. However, Appellant did not object to the admission of this eyewitness identification evidence at trial. See Neil v. Biggers, 409 U.S. 188, 196-201 (93 SCt 375, 34 LE2d 401) (1972) (discussing the due process protection against the admission of evidence deriving from suggestive identification procedures). And it is firmly established that the determination of a witness's credibility, including eyewitness identification, is within the exclusive province of the jury. See Reeves v. State, 288 Ga. 545, 546 (705

5

SE2d 159) (2011). See also <u>Walker v. State</u>, 295 Ga. 688, 690 (763 SE2d 704) (2014) (holding that whether and to what extent a witness's testimony should be believed is "a matter to be decided by the jury that saw and heard the testimony, not by an appellate court reviewing a transcript"); <u>Vega v. State</u>, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

Viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted, either directly or as a party to Lavant's criminal conduct. See <u>Jackson v. Virginia</u>, 443 U.S. at 319; OCGA § 16-6-20 (parties to crime); <u>State v. Jackson</u>, 287 Ga. 646, 652-653 (697 SE2d 757) (2010) (holding that a defendant may be convicted of felony murder when the death of his accomplice was a reasonably foreseeable result of their commission of a felony).

(b)     Appellant also argues that the evidence was insufficient to support his convictions under former OCGA § 24-4-6, which said: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be

consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[2]  However, this doctrine only applies when the State's case against the defendant was "wholly circumstantial," Walker, 295 Ga. at 691, and in this case, the State did not rely solely on circumstantial evidence.  There was substantial direct evidence in the form of not only Barner's and Key's testimony identifying Appellant as one of their assailants, but also Appellant's admission to Lewis of his participation in the home invasion.  See id.  Appellant disputes the credibility of the identification testimony, but "direct evidence from a witness who observed a crime is not converted into circumstantial evidence by the witness's credibility or lack thereof."  Lewis v. State, 296 Ga. 259, 261 (765 SE2d 911) (2014).  Moreover, the circumstantial evidence presented was also sufficient for the jury to reject any other reasonable theory except that Appellant was guilty as charged.  See Clark v. State, 296 Ga. 543, 545-546 (769 SE2d 376) (2015).  Thus, Appellant's statutory challenge to the sufficiency of the evidence is meritless.

Judgment affirmed.  All the Justices concur.

---

[2] This case was tried under Georgia's old Evidence Code.  Former OCGA § 24-4-6 is carried forward in the new Evidence Code as OCGA § 24-14-6.