303 Ga. 871
FINAL COPY

S18A0123. GADSON v. THE STATE.

NAHMIAS, Justice.

Appellant Joseph Gadson and his brother Nkosi Gadson were tried together and found guilty of the murder of Amady Seydi and other crimes committed against Seydi and his girlfriend Tarah Medsker over the span of three weeks in the fall of 2005. Appellant contends that the trial court committed plain error with regard to one burglary charge by failing to instruct the jury on the State's burden of proof when the evidence of a crime is wholly circumstantial. He also contends that he cannot obtain full and fair appellate review of his convictions because five documents are missing from the record of the trial. As explained below, Appellant has not established plain error in the omission of the proof-by-circumstantial-evidence instruction, nor has he shown that he has been harmed by the incomplete record. We therefore affirm his

convictions.[1]

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. According to Medsker, in 2005 she lived with Seydi in the same apartment complex as Appellant and his brother Nkosi. Seydi sold small amounts of marijuana out of his apartment, and Medsker knew Nkosi because he often purchased marijuana from Seydi. In late

---

[1] The crimes charged spanned the period from September 21 to October 11, 2005. On November 13, 2007, a Fulton County grand jury indicted Appellant and Nkosi for malice murder, two counts of felony murder (based on burglary and the aggravated assault of Seydi, both on October 11), two counts of aggravated assault of Seydi (on October 8 and 11), two counts of aggravated assault of Medsker (on October 8 and 11), two counts of burglary (one to commit theft between September 21 and October 10 and the other to commit aggravated assault on October 11), possession of cocaine (between September 22 and October 11), and possession of a firearm during the commission of a felony (on October 11). At a joint trial from August 25 to September 3, 2008, the jury found both defendants guilty of all charges. On September 4, 2008, the trial court sentenced Appellant to serve life in prison for malice murder, two 20-year consecutive terms for the aggravated assaults of Seydi on October 8 and Medsker on October 11, five consecutive years for the firearm offense, two 20-year concurrent terms for the aggravated assault of Medsker on October 8 and the burglary occurring between September 21 and October 10, and a 15-year concurrent term for the cocaine possession. The court purported to merge the remaining verdicts into the malice murder conviction, but this Court need not address any issue regarding the sentences. See Dixon v. State, 302 Ga. 691, 698 (808 SE2d 696) (2017).

Appellant filed a timely motion for new trial. From the time the motion was filed in September 2008 until it was amended in October 2016, Appellant was represented by four different attorneys and several other motions for new trial were filed, including a motion purportedly filed by Appellant pro se; the case was also assigned to a new judge. After a hearing on January 30, 2017, the trial court denied Appellant's motion for new trial on February 27, 2017. Appellant filed a timely notice of appeal, which he amended on April 14, 2017, and the case was docketed in this Court to the term beginning in December 2017 and submitted for decision on the briefs. This Court affirmed Nkosi's convictions seven years ago in Gadson v. State, 289 Ga. 117 (707 SE2d 868) (2011), which raised claims different than those raised by Appellant. We note that this is yet another case with an inordinate post-conviction delay in the trial court. See Owens v. State, 303 Ga. 254, 258-260 (811 SE2d 420) (2018).

September, a few weeks before the murder, Seydi and Nkosi got into a heated dispute over a marijuana deal, and Seydi told Nkosi not to come back to his apartment again. Two days later, Seydi and Medsker's apartment was burglarized, and several cameras, some marijuana, and other items were stolen. That night, Appellant came to the apartment, and he appeared "a little nervous" when he and Seydi discussed the burglary.

Two or three days before the murder, Appellant and Nkosi came to the apartment, and Nkosi pointed a gun at Seydi and Medsker. The brothers then demanded that Seydi give them half of his profits from his marijuana sales each day, took Seydi's gun and Medsker's cell phone, and left. Because of that incident, Seydi and Medsker decided to move, and they rented a truck and began packing.

On the evening of October 11, 2005, Seydi and Medsker were at the apartment removing the last of their belongings. Medsker answered a knock on the door and let in a man she believed was a friendly acquaintance. He was followed in by Nkosi and Appellant, who wore a dark nylon mask; Medsker was able to identify Appellant because she could see his face through the stocking mask and recognized his voice, stature, and demeanor. Appellant held a gun to

Medsker's head while Nkosi sought out Seydi. Seydi was shot multiple times and died almost immediately. During an interview with the police that night, Medsker identified Nkosi in a photo lineup as one of the assailants, and a few days later she identified Appellant in another photo lineup as the masked assailant.[2]

The State's evidence also showed that on the day after the murder, the police arrested the brothers and searched their apartment. The police found a black stocking mask, a camera stolen in the first burglary, and the gun and cell phone taken from Seydi and Medsker a couple of days before the murder. They also found some marijuana and a pipe that tested positive for cocaine.[3] Appellant and Nkosi admitted during their interviews with the police that they were involved in a dispute with Seydi over marijuana and money.

Appellant does not contend that the evidence was insufficient to support

---

[2] The man who entered the apartment before Nkosi and Appellant was not called as a witness at trial. Another man, who was helping the victims move, was in the apartment during the shooting. He testified that he saw three men enter the apartment and one of them, who was wearing a black mask or bandana, held a gun to Medsker's head. The witness then hid in a bedroom, and he did not see the shooting and could not identify the assailants.

[3] The marijuana seized from Appellant and Nkosi's apartment was not linked to the marijuana that was stolen from Seydi and Medsker's apartment during the first burglary; the State argued that the seized marijuana was taken at the time of the murder.

his convictions as a matter of constitutional due process. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was legally sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See id. See also Reeves v. State, 288 Ga. 545, 546 (705 SE2d 159) (2011) (explaining that "the determination of a witness'[s] credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury," and that former OCGA § 24-4-8 (now OCGA § 24-14-8) provides that "[t]he testimony of a single witness is generally sufficient to establish a fact" (citation and punctuation omitted)).

2. Appellant contends that the trial court committed plain error by failing to give the jury an instruction based on former OCGA § 24-4-6 regarding the State's burden of proof when the evidence of a crime is wholly circumstantial. That statute — a part of the old Evidence Code in effect at the time of Appellant's trial in 2008 that was carried forward in the new Evidence

Code as OCGA § 24-14-6 — says: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Appellant concedes that he failed to object to the omission of this instruction and that our review of his claim that it should have been given is therefore limited to plain error. See OCGA § 17-8-58 (b); State v. Kelly, 290 Ga. 29, 32 (718 SE2d 232) (2011). To establish plain error, Appellant must show that the instructional error alleged was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Durham v. State, 292 Ga. 239, 241 (734 SE2d 377) (2012).

Appellant argues that the evidence was wholly circumstantial as to the first burglary of Seydi and Medsker's apartment, which was charged in Count 8 of the indictment. We agree.[4] The evidence as to that burglary, which is

_____

[4] As to the crimes that occurred along with Seydi's murder on October 11, 2005, and the crimes that occurred two or three days earlier, there was clearly some direct evidence — Medsker's eyewitness testimony regarding those events. Thus, as to all of those crimes, the trial court did not err, much less plainly err, by not giving an unrequested jury instruction based on former OCGA § 24-4-6. See Walker v. State, 295 Ga. 688, 691 (763 SE2d 704) (2014) ("Absent a written request,

6

recounted in Division 1 above, was entirely circumstantial; there was no direct evidence placing Appellant at Seydi and Medsker's apartment at the time of the first burglary. While the evidence was legally sufficient to support the jury's finding that Appellant and his brother Nkosi committed the burglary together, it was also consistent with the inference that Nkosi committed the burglary alone. See Stubbs v. State, 265 Ga. 883, 885 (463 SE2d 686) (1995) (explaining that "[d]irect evidence is that which is consistent with *either* the proposed conclusion *or* its opposite," whereas "circumstantial evidence is that which is consistent with *both* the proposed conclusion *and* its opposite" (emphasis in original)).[5]

Because the evidence of Appellant's participation in the first burglary was wholly circumstantial, this Court's "clear" and longstanding precedent required

---

a trial court is required to charge on the law of circumstantial evidence as set forth in former OCGA § 24-4-6 and current OCGA § 24-14-6 only if the State's case against the defendant is wholly circumstantial."). See also Wade v. State, 304 Ga. __ (__ SE2d __) (2018). It is less clear what direct evidence there was regarding the possession of cocaine charge, which was based on the cocaine residue found on the pipe the police seized in Appellant and Nkosi's apartment on the day after the murder. Appellant makes no argument regarding that charge, however, so we will not consider it further. See Supreme Court Rule 22.

[5] To its credit, the Attorney General's brief concedes that the evidence of "the first burglary did appear to be circumstantial." To its discredit, the District Attorney's brief asserts that both direct and circumstantial evidence supported the State's Count 8 burglary case, but points only to the evidence set forth in Division 1, making no attempt to explain how that proof could be understood as direct evidence of Appellant's guilt.

the trial court to instruct the jury on proof by circumstantial evidence as set forth in former OCGA § 24-4-6 even though Appellant did not request such an instruction. See Stubbs, 265 Ga. at 884 ("Our law remains clear: (1) Even in the absence of a request, a trial court must charge on the law of circumstantial evidence when the State's case rests solely upon such evidence; (2) The charge should consist of the language set forth in [former] OCGA § 24-4-6."). See also Walker v. State, 295 Ga. 688, 691 (763 SE2d 704) (2014). Accordingly, the trial court's failure to give an instruction tracking former OCGA § 24-4-6 was obvious error, and it was not an error that Appellant affirmatively waived. However, Appellant has not met his burden under the plain error test to show that the omission of this instruction likely affected the jury's verdict on Count 8.

"In evaluating claims of instructional error, we examine the jury charge as a whole." Woodard v. State, 296 Ga. 803, 806-807 (771 SE2d 362) (2015). Viewed as a whole, the trial court's charge sufficiently informed the jury of the State's burden of excluding all other reasonable hypotheses except Appellant's guilt with respect to the first burglary. The court gave instructions on the State's burden to prove Appellant's guilt beyond a reasonable doubt and the State's

duty to prove beyond a reasonable doubt "every material allegation of the indictment and every essential element of the . . . crimes charged." The court also advised the jury that "facts and circumstances that merely place upon [Appellant] a grave suspicion of the . . . crimes charged, or that merely raise a speculation or conjecture as to [Appellant's] guilt are not sufficient to authorize a conviction." The court discussed the difference between direct and circumstantial evidence, explaining that direct evidence "points immediately to the question at issue" while circumstantial evidence may "be used to prove a fact by inference," but such inferences must be "reasonable and justified in light of your experience." The court then gave detailed instructions explaining that the jury was not authorized to find Appellant guilty based merely on the circumstances of his presence at the scene of a crime or his association with other persons involved in the commission of a crime.[6]

---

[6] Specifically, the court instructed:

A jury is not authorized to find a person who was merely present at the scene of the commission of a crime at the time of its perpetration guilty of consent in and concurrent of the commission of the crime unless the evidence shows beyond a reasonable doubt that such a person committed the alleged crime, or crimes, helped in the actual perpetration of the crime, or crimes, or participated in the criminal endeavor.

A jury is not authorized to find a person who is merely associated with other persons involved in the commission of a crime, or crimes, guilty of consent in or concurrent in the commission of the crime, or crimes, unless the evidence shows

The other reasonable hypothesis supported by the evidence was that Appellant's brother committed the first burglary alone, even if Appellant learned of it after the fact. The instructions the trial court gave, particularly the instructions on mere presence and mere association, adequately advised the jury that if it believed that the circumstantial evidence supported this alternative hypothesis, it should return a verdict of not guilty. The jury disregarded that hypothesis and returned a verdict of guilty, as the evidence authorized it to do. See Bailey v. State, 299 Ga. 807, 808 (792 SE2d 363) (2016). Indeed, while this alternative hypothesis may have been available in theory, Appellant never suggested it to the jury at trial — not in opening statement, closing argument, or at any other point. Appellant was tried with Nkosi, and the joint defense theory was that Medsker was an unreliable witness and that neither brother had committed any of the crimes charged; Appellant did not want to suggest that his brother alone committed the first crime.

Under these circumstances, we cannot say that if the trial court had added a jury instruction based on former OCGA § 24-4-6, it is likely that the jury

beyond a reasonable doubt that such person helped in the actual perpetration of the crime, or crimes, or participated in the criminal endeavor.

10

would have returned a different verdict on Count 8. Appellant has therefore failed to establish plain error. See <u>Manning v. State</u>, 303 Ga. 723 (814 SE2d 730) (2018).

3.    Appellant also contends that he cannot obtain full and fair appellate review of his convictions because certain documents are missing from the record of his trial.[7] Between 2011 and 2016, Appellant raised the issue of the trial record being incomplete in several pleadings and hearings. In his amended motion for new trial, filed in October 2016 — eight years after the trial — Appellant asserted, and the State then conceded, that the record is missing five documents: the arrest warrants for Appellant and Nkosi; the search warrant for

_____

[7] OCGA § 5-6-41 (d) says:

> Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question on appeal or other posttrial procedure shall be reported; and, where the report is transcribed, all such matters shall be included in the written transcript, it being the intention of this article that all these matters appear in the record. Where matters occur which were not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made and included as a part of the record. The transcript of proceedings shall not be reduced to narrative form unless by agreement of counsel; but, where the trial is not reported or the transcript of the proceedings for any other reason is not available and the evidence is prepared from recollection, it may be prepared in narrative form.

We use the terms "transcript" and "record" interchangeably in this opinion.

11

the brothers' apartment and the affidavit that was submitted to obtain the search warrant; and a "Charge Disposition Report" that listed additional charges against Appellant that were contemplated by the State but not alleged in the indictment.

At the motion for new trial hearing on January 30, 2017, the prosecutor told the court that the State was unable to locate the missing documents; the parties and the court then agreed that the record could not be reconstructed because counsel for the State and for Appellant were not the trial attorneys and in 2011 the judge had replaced the judge who presided over the trial.[8] On February 27, 2017, the court entered an order denying Appellant's motion for new trial, ruling that the parties were unable to agree as to the correctness of the transcript with regard to the five documents and that the court could not recall

---

[8] The parties have not explained why none of the trial participants, including the lawyers and judge, were interviewed or called as witnesses at any of the hearings relating to the attempt to complete the record. See Johnson v. State, 302 Ga. 188, 194 (805 SE2d 890) (2017) (explaining that efforts to recreate a trial transcript may require calling individuals who were present for the trial to testify at the record reconstruction hearing). See also Mosley v. State, 300 Ga. 521, 524-526 (796 SE2d 684) (2017) (concluding that the appellant was not entitled to a new trial because the State recreated the missing transcript of one trial day by calling three of the four witnesses who had testified that day as well as trial counsel for both parties); Leeks v. State, 296 Ga. 515, 517 (769 SE2d 296) (2015) (noting that where the motion-for-new-trial judge had not presided over the trial, the State supplemented the incomplete transcript with an affidavit of the trial judge and testimony from two prosecutors who tried the case).

what transpired.[9] See OCGA § 5-6-41 (g) (saying that where the parties cannot agree as to the correctness of a reconstructed transcript and the trial judge cannot recall what transpired, "the judge shall enter an order stating that fact"). The court also concluded, however, that the "missing exhibits did not play a large part in the proceedings" and "do not prevent adequate review of the trial," so Appellant failed to show the harm needed to require a new trial.

We agree with that conclusion. Because Appellant has not shown that he has been prevented from raising any viable issue on appeal or otherwise harmed as a result of the minimally incomplete record, we affirm his remaining

_____

[9] The court had previously issued an order on February 9, 2017, finding that the five documents are located in the discovery packet for the case and ordering counsel to determine if they could stipulate that those documents could be used to supplement the record. Appellant refused to stipulate to the documents, however, saying that his appellate counsel had no way of knowing whether the documents are the same documents referenced in the transcript. The court attached the documents from the discovery packet to its order denying Appellant's motion for new trial, but did not formally supplement the trial record. Cf. OCGA § 5-6-41 (g) (explaining that when the parties cannot agree about the correctness of a transcript prepared from recollection, "the decision of the trial judge thereon shall be final and not subject to review"); Leeks, 296 Ga. at 519 n.4 (noting that a successor judge may hear and decide the issue of whether a trial record can be supplemented even if that judge did not preside over the trial). For this reason, while we have reviewed the record as a whole — including the discovery packet and the existing trial transcript — we do not presume that the documents the court attached to its order are the same documents presented at Appellant's trial. See Jenkins v. Jenkins, 231 Ga. 371, 371 (202 SE2d 52) (1973) (holding that there was no evidence for this Court to review on an appeal from a contempt order when the parties refused to stipulate as to the facts surrounding the unrecorded contempt proceeding and the court did not decide the matter); Parker v. State, 154 Ga. App. 668, 668-669 (269 SE2d 518) (1980) (declining to consider as evidence a reconstruction of trial testimony submitted by defense counsel but not approved by opposing counsel or the trial court).

13

convictions.

(a)    A defendant who is tried and convicted has a right to appeal and a right to a transcript of the trial to use in bringing that appeal.  See Wilson v. State, 246 Ga. 672, 675 (273 SE2d 9) (1980).  An appellant who is deprived of an adequate trial transcript has effectively been denied his right to appeal.  See Johnson v. State, 302 Ga. 188, 191-192 (805 SE2d 890) (2017); Sheard v. State, 300 Ga. 117, 120 (793 SE2d 386) (2016).  In felony cases such as this one, "the State is responsible for ensuring that a correct and complete transcript is created, preserved, and provided to the defendant upon his request."  Johnson, 302 Ga. at 192.  See also OCGA §§ 17-8-5 (a); 5-6-41 (a).  But if the State does not fulfill its duty to file a complete transcript after a guilty verdict has been returned in a felony case, the defendant is not automatically entitled to a new trial. See Sheard, 300 Ga. at 120.  Instead, OCGA § 5-6-41 (f) and (g) allow any party who contends that the record "does not truly or fully disclose what transpired in the trial court" to have the record completed either by stipulation of the parties or, if the parties cannot agree, by the decision of the trial court. See Johnson, 302 Ga. at 193-194 (discussing this process).

Where all or an important portion of the original verbatim transcript of a

14

trial is lost and the transcript reconstructed pursuant to OCGA § 5-6-41 (f) and (g) is manifestly inadequate, an appellant is not required to specify how he has been harmed by a particular error that may have occurred at trial but is now buried in unrecorded history. See Johnson, 302 Ga. at 197-198 (citing cases). But where, as here, an otherwise verbatim transcript is missing only one or a few parts of the trial, the appellant is not entitled to a new trial unless he alleges that he has been harmed by some specified error involving the omitted part and shows that the omission prevents proper appellate review of that error. See id. See also Brockman v. State, 292 Ga. 707, 716 (739 SE2d 332) (2013) (concluding that the appellant failed to show that he was harmed or prevented from raising any viable issue on appeal when four exhibits were missing from the record but were adequately discussed in the transcript); Ruffin v. State, 283 Ga. 87, 88 (656 SE2d 140) (2008) (holding that the appellant was not entitled to a new trial because he failed to allege specific harm from the absence of a transcript of voir dire, opening statements, bench conferences, and the polling of the jury); Smith v. State, 251 Ga. 229, 230 (304 SE2d 716) (1983) (holding that the appellant's general assertion of harm due to missing portions of a transcript was insufficient because he failed "to show how he was harmed or to

15

raise any issue which this Court is unable to adequately review because of skips in the record").

(b)    Although Appellant makes a general assertion that he has been harmed by the incomplete record, he alleges no specific harm from the omission of his and Nkosi's arrest warrants and the affidavit that was submitted to obtain the search warrant of their apartment.  See Ruffin, 283 Ga. at 88; Smith, 251 Ga. at 230.  In any event, the discussion of these three documents in the trial transcript would be sufficient to allow this Court to review their admission into evidence, had they been the subject of such an enumeration of error.  See Brockman, 292 Ga. at 716.

(c)    Appellant does allege particularized harm from the missing search warrant for the apartment, claiming that the omission prevents this Court from adequately reviewing his objection to the warrant's admission into evidence during the trial.  The trial transcript shows that Appellant objected to the warrant's admissibility on the ground that it had additional documents attached to it, including other search warrants.  The transcript also clearly indicates, however, that Appellant got what he asked for.  The State agreed to limit the exhibit to the one-page search warrant, and after the close of the evidence, the

16

parties confirmed on the record that the additional pages attached to the search warrant had been removed.

Moreover, during its deliberations, the jury sent a note to the trial court asking if there was "a list of evidence." The court understood the question to be seeking a list of all of the evidence admitted during the trial and ultimately told the jury that there was no such list. When the court was discussing with the parties its proposed response to the note, the prosecutor said that she believed the jury was "referring to the evidence log from the search warrant, which we did admit into evidence . . . but I think in an abundance of caution, we just all agree [sic] that we would not send that back." To the extent the prosecutor was saying that the evidence log (rather than the search warrant) was admitted into evidence, the transcript shows that she was mistaken. In any event, her comment indicated that the additional pages attached to the search warrant — and possibly the search warrant itself — were not given to the jury during its deliberations. Thus, the existing record is sufficient for this Court to determine that Appellant suffered no harm with respect to the missing search warrant. See id.

(d) Finally, Appellant claims harm from the record's omission of a

document entitled "Charge Disposition Report," which the trial transcript indicates was created by the District Attorney's office and listed additional potential charges against Appellant that were contemplated by the prosecutors but not included in the indictment. The transcript also indicates that the Report was accidentally attached to the indictment that was given to the jury during its deliberations. The jury later sent the trial court a note saying that the charges in the indictment differed from those listed in the Charge Disposition Report. After the court read the jury's note to the parties, Appellant moved for a mistrial on the ground that the jury had been confused by the Report. The court denied the mistrial motion, but then brought the jurors back into the courtroom, instructed them that the Charge Disposition Report was irrelevant and that they needed to concern themselves only with the charges in the indictment, and removed the Report from the jury room. Despite these curative measures, Appellant reiterated his motion for mistrial. He now contends that without seeing the Charge Disposition Report that the jury saw, this Court cannot properly review whether the trial court abused its discretion in refusing to declare a mistrial. See Gardner v. State, 273 Ga. 809, 812-813 (546 SE2d 490) (2001) ("A trial court's discretion in granting or refusing to grant a mistrial

18

should not be disturbed unless a mistrial is essential to the preservation of the right to a fair trial."). We disagree.

The jury's note to the trial court is included in the record; it lists the potential charges against Appellant that were included in the Charge Disposition Report inadvertently given to the jury which led to the jury's question. The note — and the parties' discussion with the court about its response to the note — provide us with sufficient information about the missing report. The trial transcript also includes Appellant's mistrial motions, the trial court's decision not to grant a mistrial, the court's curative instruction to the jury, and the court's direction that the Report be removed from the jury room. We need no more to decide that the trial court did not abuse its discretion with regard to this issue. See, e.g., Moore v. State, 294 Ga. 450, 451 (754 SE2d 333) (2014) (holding that the trial court did not abuse its discretion in denying the defendant's mistrial motion where the court gave a curative instruction after three jurors saw references to his prior guilty plea for sexual battery); Gardner, 273 Ga. at 812-813 (concluding that the trial court did not abuse its discretion in denying a mistrial and instead giving curative instructions after a witness commented on the defendant's prior crimes and again after the jury heard a recording of the

defendant's interrogation with police that referenced a prior crime he committed).

(e)   In sum, Appellant has failed to show that he has been harmed by the handful of minor omissions in the trial transcript.   The loss of the five documents was unfortunate, as was the resulting delay in resolving Appellant's motion for new trial, but Appellant is not entitled to a new trial on this ground. Accordingly, we affirm his convictions.

<u>Judgment affirmed.  All the Justices concur.</u>

Decided June 18, 2018.

Murder. Fulton Superior Court. Before Judge Markle.

Tyler R. Conklin, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.